# South and North Ala. Railroad Company *v.* Wood.

66  167
104  396
66  167
107  604

*Action against Railroad Company, as Common Carrier, for Non-Delivery of Freight.*

1. *Common carrier; delivery of goods to consignee* —The undertaking of a common carrier, as a general rule, includes the obligation to deliver the goods

safely, at the place of destination, either to the consignee, or to his authorized agent ; but, in the case of railroad companies, by universal custom, personal delivery to the consignee or his agent is not required.

2.   *Same ; notice of arrival of goods.*—As to the necessity of notice to the consignee, of the arrival of the goods at the place of destination, there is a conflict in the authorities ; but the preponderance of the decisions, contrary to the ancient rule, absolves railroad companies from the duty of giving special notice.

3.   *Liability of railroad company, as carrier and warehouseman, at station having agent or depot.*—Where a railroad company has an agent or depot at the place of destination, the rule governing its liability, both as a common carrier and as a warehouseman, for goods received for transportation, is correctly stated in the case of *Ala. & Tenn. Rivers Railroad Co. v. Kidd,* 35 Ala. 209.

4.   *Liability for goods shipped to "flag station," having no depot nor agent.*—A railroad company is not required by law to keep a warehouse or depot at every station along the line of its road, and may lawfully stipulate, either expressly or by implication, that it will assume no liability as a warehouseman at a "flag station," where it has no depot nor agent ; and when the consignee is fully advised, at the time of shipment, that the company has no depot nor agent at such station, and it is not shown that the exigencies of its business required that it should have an agent or depot at that place, the liability of the company as a common carrier terminates with the safe delivery of the goods on the side-track at that point, and it assumes no liability as a warehouseman.

5.   *Extent of carrier's liability.*—The liability of a common carrier, for goods received for transportation, is not confined to losses or injuries resulting from the negligence of himself and his agents, but extends to and includes, in the absence of a special stipulation limiting it, every loss or damage which is not caused by the act of God, or of the public enemy.

6.   *Burden of proof, in case of damage or injury.*—In an action against a common carrier, for a damage or injury to goods received by him for transportation, the general rule is, the damage or injury being shown, that the *onus* is on the carrier to show that his liability terminated before the loss or damage occurred.

7.   *Relevancy of evidence as to quantity of corn delivered.*—In an action against a railroad company as a common carrier, for the failure to deliver a quantity of corn received for transportation, the quantity received being a material question, the person who delivered it for the plaintiff having testified to the quantity, as ascertained from the number of barrels and the quantity of shelled corn measured out of one barrel ; he may state, as a fact corroborating his measurement and calculation, that he afterwards filled the same barrel with corn out of the same crib, and again measured it out, with the same result as before.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. LOUIS WYETH.

This action was brought by Edmund A. Wood, against the appellant, a domestic corporation, and was commenced before a justice of the peace, on the 12th July, 1876.   On appeal to the Circuit Court, the plaintiff there filed a complaint, claiming " seventy-five dollars as damages for the failure to deliver certain goods, the property of the plaintiff, viz., seventy-four bushels of corn, received by said defendant as a common carrier, to be delivered to L. K. Moss, at Jemison Station, Alabama, for a reward, which the defendant failed to do." The defendant pleaded the general issue, "in short by consent," with leave to give any special matter in evidence ; and the cause was tried on issue joined on this plea.   On the trial,

as appears from the bill of exceptions, the plaintiff testified that he bought three hundred bushels of corn, in January, 1876, from one Y. C. Copeland, near Blountsville, and employed said Copeland to deliver it for him on a car belonging to the defendant, on the switch at Bangor, consigned to L. K. Moss, at Jemison Station ; that he was present at Bangor when the last load was delivered on the car, and saw the car locked securely by the depot agent at that place ; that he prepaid the freight, as required by the agent, amounting to $40 ; " that he did not see the corn measured, but the car was two-thirds full, or more, when the corn was all in " ; and " that he was told by defendant's said agent at Bangor, before the corn was shipped, that Jemison was a mere 'flag station,' at which the company had no agent." Said Copeland was then introduced as a witness for plaintiff, " and testified that, in January, 1876, he sold plaintiff three hundred bushels of corn ; that he saw a part of the corn measured ; that it was ordinarily well slip-shucked, and good, sound corn ; that it was measured in a tub, or barrel, which was afterwards shucked and shelled out, and the shelled corn measured by him in a half-bushel, a peck, and a half-peck measure ; that the barrel measured out a bushel, a peck, and one-half peck nearly ; and that the half-peck was not taken into the count. Plaintiff asked this witness, whether, after he heard the corn had fallen short, he, and W. W. Copeland, and G. C. Montgomery, agent for plaintiff, did not take the same barrel, and re-measure it out of the same corn then remaining in the crib ; and if they did not fill the barrel as in the first instance ; and if so, to state whether the measure held out with the first measure ; to which question the witness answered, that he did, and that the measure held out. To this question, and to the answer thereto, the defendant objected ; and said objections being overruled, defendant excepted."

Other witnesses for the plaintiff testified to facts showing the measurement and quantity of the corn delivered. Moss, the consignee of the car, testified that the car was not more than half full when delivered to him, and that it measured only two hundred and twenty-five bushels. The corn was in good condition when delivered to Moss, and the car did not appear to have leaked, or to have been broken open, or otherwise injured. Evidence was adduced, on the part of the defendant, tending to show that a car, when full, would not hold more than two hundred and eighty-five bushels ; and one witness, who testified as an expert, " made a mathematical calculation in the presence of the jury," as to the capacity of a car of the specified dimensions, showing that, "if the car was but two-thirds full, there was not more than about two

hundred and twenty-five bushels." The delivery of the corn on the car was completed on the 19th or 20th January, and the car was delivered to said Moss, the consignee, as he testified, " on the switch at Smith's Mills, some two miles north of Jemison, some ten days after the corn was shipped." Moss testified, as a witness for the plaintiff, " that Musgrove, the depot-agent at Bangor, told him he could not *bill* the corn to Smith's Mills, because there was no station there, but would write to Mr. Meeks, the superintendent, and try to have it stopped there ; that said agent told him, also, that Jemison was a mere ' flag station,' and the defendant had no agent there ; that he (witness) never went to Jemison for the corn, and could not say when it arrived there." Said Musgrove, the depot-agent at Bangor, a witness for defendant, " testified that he told plaintiff and said Moss, the consignee, that he would write to Mr. Meeks, the superintendent, to have the car put off at Smith's Mills ; that this could only be done by the permission of the superintendent ; also, that the car and freight was *billed* to Jemison, and that he turned over the car containing the corn, on the 22d January, to J. K. Britt, conductor of a freight train on the defendant's road, to be carried to Jemison." Said Britt, also a witness for the defendant, testified " that he examined the car containing plaintiff's corn, as it was his duty to do when he received it, and found the same in good order, and carried it direct to Birmingham, where the same was then checked off, and, in forty minutes after his arrival there, saw the said car in one of the defendant's trains, in charge of a conductor on the road, move off in the direction of Jemison."

This being the substance of the evidence, all of which the bill of exceptions purports to set out, " the court charged the jury, of its own motion, as follows : " 1. That if the jury believed, from the evidence, that the plaintiff delivered three hundred bushels of corn to the defendant, to be shipped from Bangor to Jemison, or any other place on the line of defendant's road, defendant must account for the same ; and if he fails to do so, plaintiff is entitled to recover in this action. 2. That it was the duty of the defendant to retain the car of corn at the station or place to which it was shipped, until called for by plaintiff or the consignee, at the defendant's risk ; or to retain the same for a reasonable time, and if the plaintiff or consignee failed to apply for the freight in such time, then the defendant could sell the same, and, out of the proceeds thereof, pay itself for its care and attention in keeping the same. 3. That the jury might infer from the evidence that, during the time elapsing between the time the corn was shipped at Bangor and the time it was delivered to the con-

signee, that it was at Jemison, Tuskaloosa, or anywhere else. 4. The court stated to the jury, also, that they might infer from the evidence, if they thought proper, that some of the corn was taken at Bangor, while being loaded, or before it was removed from Bangor, or after it reached Jemison, or the place to which it was shipped."

The defendant excepted to the *second* and *fourth* of the charges thus given, and requested the following charges, which were in writing: 1. "To entitle the plaintiff to recover in this suit, he must show that he delivered to the defendant a greater amount of corn than the defendant delivered to Moss, the consignee, and that such failure was on account of the negligence of the defendant, or of the defendant's agents." 2. "If the defendant delivered the freight car at Jemison, or on the side track at such station; if they find from the evidence that the company had no agent at said station, and that this fact was known to plaintiff, and so understood by him; then it was the duty of the consignee to receive his freight, and the liability of the company closed; and if the corn was lost after that time, then it is the loss of the plaintiff, and the defendant is not liable for such loss or destruction." The court refused each of these charges, and the defendant excepted to their refusal.

The refusal of the charges asked, the giving of the charges excepted to, and the admission of the evidence of Copeland to which objection was made, as above stated, are now assigned as error.

THOS. G. JONES, with whom was J. W. INZER, for appellant, cited *McMaster v. Penn. Railroad Co.*, 69 Penn. St. 374; *Lemke v. Chicago Railroad Co.*, 39 Wisc. 453; *Hedges v. Railroad Co.*, 49 N. Y. 226; *Richardson v. Goddard*, 23 How. U. S. 28; *Railroad Co. v. Campbell*, 12 Indiana, 55; *Stone v. Rice*, 58 Ala. 95; *M. & G. Railroad Co. v. Prewitt*, 46 Ala. 63.

C. F. HAMILL, *contra*, cited *Ala. & Tenn. Rivers Railroad Co. v. Kidd*, 35 Ala. 209; *M. & G. Railroad Co. v. Prewitt*, 46 Ala. 63; *Southern Express Co. v. Armistead*, 50 Ala. 350; *M. & O. Railroad Co. v. Hopkins*, 41 Ala. 486; *Jones v. Pitcher & Co.*, 3 Stew. & P. 135; *Ward v. Reynolds*, 32 Ala. 384; *Stone v. Watson*, 37 Ala. 279; *Buchanan v. Collins*, 42 Ala. 419; *Johnson v. West*, 43 Ala. 689.

SOMERVILLE, J.—This is an action brought by the appellee against the South and North Alabama Railroad Company, for the failure to deliver a car-load of corn, received by the said company for transportation by it as a common car-

rier. There is no count in the complaint, seeking to charge the company on the ground of negligence in the custody of the goods, in its capacity as a warehouseman.

As a general rule, the undertaking of a common carrier, to transport goods to a particular destination, includes the obligation of a safe delivery of them to the consignee, or his authorized agent. And the contract of carriage is one of insurance against every loss or damage, except such as may be occasioned by the act of God, or the public enemy.—Angell on Carriers, § 282 ; *Fitchburg, etc., R. R. Co. v. Hanna,* 6 Gray, 539 ; *Heineman v. Grand Trunk Railway Co.,* 31 How. (N. Y.) 430.

In the case of railroad companies, universal custom seems to have settled it, as being the more reasonable rule, that a *personal* delivery to the owner, or consignee, is not required. Their routes are, in a measure, permanently fixed, and can not be easily varied to suit the convenience or accommodation of the public. Their cars and locomotives run on certain lines, or tracks, from which they can not deviate ; and it is, therefore, implied that they shall deliver, either at the termination of their routes, or at fixed intermediate stations. Hutchinson on Carriers, § 367. And, although the authorities are greatly conflicting on the question of *notice,* there seems to be a preponderance of the decisions favoring the proposition, that no obligation rests on railway carriers to give special notice of the arrival of goods to the person to whom they are consigned. This is not in accordance with the ancient rule governing common carriers generally ; and its establishment seems to furnish a fresh illustration of that wonderful and plastic power of the whole system of the common law, to mould itself to the rapid growth of modern commerce, and the new phases of an advancing civilization.

It is not unreasonable, in such cases, to assume that the consignee has been already advised by the consignor, of the fact that the goods have been forwarded to him. It would, too, be practically impossible to require such notice to each consignee, where the arrivals of goods by this mode of transportation are so frequent and various, as is the case in populous emporiums of commerce and the great centres of railway traffic.—Redfield on Car. § 110 ; Hutchinson on Car. §§ 367–68.

These principles apply where the carrier has an agent or depot at the point of destination. The rule governing the liability of railroad companies, in such cases, whether as common carriers or as warehousemen, is properly stated by this court in the case of *Ala. & Tenn. Rivers Railroad Co. v. Kidd,* 35 Ala. 209 ; and it is unnecessary for us here to reiterate it.

[South & North Ala. R. R. Co. v. Wood.]

In the present case, as shown by the evidence, it was distinctly understood, at the time of the shipment of the corn in controversy, that the South and North Ala. Railroad Company had no agent at " Jemison Station," which was a mere "flag station," to which the car-load of corn was consigned. It was equally well made known, that there was neither agent nor station at " Smith's Mills," where it was agreed that the corn might be delivered. The question presented for our decision is, Did the safe delivery of the car, containing the corn, on the side-track at a station where it was agreed to be received, terminate the liability of the railroad company as a common carrier?

The law does not require of railroad companies the absolute duty to construct or keep warehouses at every station along their route of travel or transportation. They are required only to do the best their means will enable them to do, under existing circumstances, and must act in accordance with the reasonable necessities of their usual business.—Red. on Car. § 120. We can see no reason why a railway company, acting as a common carrier, cannot stipulate, by a contract express or implied, that their liability as a carrier shall terminate with a delivery at a particular point, and that they will assume no liability at all, in such case, as warehousemen.

If the consignee is fully advised, at the time of shipment, that the company has no agent at the particular station or place to which the consignment is made, and the failure to employ such agent is not shown to be unreasonable in view of the condition of the company's business, there is, in the absence of rebutting circumstances, an implied consent that the carrier's responsibility shall be dissolved, when he has done all that the nature of the case permits him to do, according to the reasonable and proper usages of his business.

The delivery of the car-load of corn on the side-track at " Smith's Mills" terminated the liability of appellant. It would be unreasonable to require the railroad company to employ a special agent to keep the corn in further custody, unless there was an agreement, express or implied, to do so. When the consignee was informed that there was no agent of the company there, he was virtually told that there would be no custody of the goods by the carrier after arrival. The shipment, after such knowledge, was an assent, on the part of the shipper, to the implied conditions.— *Wells v. Wilmington, etc., R. R. Co.*, 6 Jones (N. C.) 47.

The case of the *Southern Express Co. v. Armistead*, 50 Ala. 350, is not in conflict with these views. That was a delivery by an express company, which is, ordinarily, required to be a

personal delivery. Such companies may, in fact, be justly said "to owe their origin to the modification of the law in regard to the delivery of goods in favor of water carriers and railway companies."—Hutch. on Car. § 379. That decision was, furthermore, based on the ground, that the evidence failed to show any contract, express or implied, waiving a personal delivery.

For the reasons above given, the second charge given by the Circuit Court was clearly erroneous.

The first charge requested by appellant was properly refused. It was vicious, in assuming that the liability of the railway company depended on its negligence, or that of its agents. Being a common carrier, the road, in the absence of a special contract limiting its common-law liability, was an insurer against every loss or damage, except that occasioned by the act of God, or the public enemy. It is obnoxious to the further objection, that it fails to recognize the duty of exculpation, which is always cast on common carriers, where a damage or injury is shown in the case of goods delivered to them for carriage. In such cases, the general rule is, that the *onus* of proof is always on the carrier, to show that his liability terminated before the loss or damage in question occurred.—Redfield on Car. § 113 ; *Wardlaw v. South Car. Railway*, 11 Rich. Law, 337.

The question to the witness Copeland, and his answer, were relevant, and properly admitted. The evidence thus elicited tended to show the amount of corn delivered to appellant for transportation. The experiment of measuring out some of the same corn, with the same barrel originally used, was proper, to test the capacity of the vessel used, and the consequent accuracy of the first measurement.

Reversed and remanded.