# Louisville & Nashville Railroad Co. *v.* McGuire & Co.

*Action against Railroad Company as Common Carrier, for Lost Goods.*

1. *Proof of receipt of goods by carrier.*—In an action against a common carrier for the loss of goods, his receipt of the goods may be proved without producing a bill of lading, or accounting for the failure to produce it.

[Louisville & Nashville Railroad Co. v. McGuire & Co.]

2. *Entries on book by agent; admissibility as evidence against principal.* Entries on the books of the carrier, made by his authorized agent in the regular course of business, and at the time the goods are received, are admissible evidence against the carrier, as forming a part of the *res gestæ* of the fact of delivery.

3. *Liability of common carrier for loss or damage.*—A common carrier, receiving goods for transportation, is an insurrer, except against the act of God or the public enemy, or the wrong or negligence of the party complaining; and is liable for the accidental loss of the goods by fire.

4. *Same; continues how long.*—In the absence of statutory regulations, the liability of a common carrier continues, after the goods have reached their destination, until the consignee has had a reasonable time to remove them; and after that time he is liable only as a warehouseman, or bailee for hire.

5. *Same; after demand and failure to deliver.*—When a carrier fails, without good excuse, to deliver the goods on demand after they have reached their destination, he continues to hold them as carrier at his own risk and peril.

6. *Same; lien for charges, as excuse for failure to deliver.*—If the failure to deliver the goods, on demand of the consignee, is not placed on the ground of a lien for charges, or the non-payment thereof, the carrier can not set up such lien or non-payment in defense of a subsequent action for the loss of the goods.

APPEAL from the City·Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by McGuire & Co., suing as partners, against the appellant as a common carrier, to recover damages for the loss of certain goods, which had been forwarded from Louisville, Kentucky, by the defendant's railroad, consigned to the plaintiffs at Birmingham ; and which were destroyed by fire, on the night of November 14th, 1884, while in the defendant's depot at Birmingham, which was also destroyed by the fire. The goods consisted of " 25 buckets of candy, 5 kegs of cider, 10 cases of lard, one kit of fish, 10 tubs of butter, and 5 gross of matches ;" and they were shipped from Louisville on different days, as follows : the kegs of cider on the 22d October, the buckets of candy on the 1st November, the lard on the 10th November, and the butter on the 11th November ; and were all received by the defendant, at its depot in Birmingham, within two, three or four days after the respective shipments. The only plea was the general issue, and, a jury being waived by consent, the case was submitted to the decision of the court " on the facts and the law."

On the trial, as appears from the bill of exceptions, the plaintiffs introduced on Cox as a witness, who was a clerk in the defendant's depot at Birmingham, " and asked him if he knew anything about the shipment of the goods, the loss of which was the foundation of this suit. It had been shown that plaintiffs had received bills of lading, and there was no evidence that they had been lost or mislaid. The defendant objected to this question, because the bills of lading would be

[Louisville & Nashville Railroad Co. v. McGuire & Co.]

better evidence of the shipment than the oral statements of the witness." The court overruled the objection, and allowed the witness to answer; to which the defendant duly excepted. During the progress of the trial, the bills of lading were produced by one of the plaintiffs, while testifying as a witness; and they were then placed in evidence by the defendant. The witness Cox, answering the question, "said that he knew nothing in relation to the matter, except as shown by the entries in the defendant's books at the depot in Birmingham;" and having produced the book, on request, he further testified," that it was his business to make the entries therein containing a statement of freight on its arrival; that some of the entries were made by himself, and he recognized the others to be in the handwriting of clerks under him, who acted by his directions in making such entries." On this evidence, the court allowed the entries to be read in evidence, showing the day on which the goods were received by the defendant at Louisville, and the day on which they arrived at the depot in Birmingham; and to this ruling the defendant also excepted. The entries showed that the cider was received at the depot in Birmingham on the 24th October, the candy on the 3d November, and the lard on the 14th November.

The plaintiffs then introduced as a witness one Moses Winsett, a negro drayman in their employment, who testified, in substance, that he was sent by plaintiffs, " on or about the 10th November, 1884," to the defendant's depot, for some candy and cider; that he saw Mr. Williams, defendant's agent having charge of that part of the business at the depot, and told him that he had been sent by plaintiffs for the candy and cider in the depot consigned to them; that Williams replied, " he could not then get the goods, because they were covered up by other goods;" that he was again sent to the depot for the goods, " on the 14th November," and, in reply to his demand, " Williams again refused to deliver them, because he said they were covered up by other goods." This witness further testified, on cross-examination, that he did not pay, nor offer to pay the freight on the goods, on either occasion when he demanded them, but that he saw one Roberts, who was in the plaintiffs' employment, pay the freight through a window at the depot; while one of the plaintiffs afterwards testified, that the freight had never been paid. Said Williams, defendant's agent, testified on behalf of defendant, "that he had no recollection of said drayman demanding the candy and cider of him at the depot; that he knows he did not refuse to deliver said goods to the drayman because they were covered up; that, on the contrary, they were not covered up by other goods; but that, if the drayman had demanded the goods of him, he could

not have delivered them to him without the payment of the freight charges, except by a special permit from said Cox." It was admitted that the plaintiffs had never sent to the depot for either the butter or the lard; the latter having arrived at the depot on the morning of the 14th November, and the butter on the 12th. As to notice of the arrival of the goods at the depot, it was proved that plaintiffs were notified on the 1st November, of the arrival of the cider on the 24th October preceding; and on the 7th November, of the arrival of the candy on the 3d.

On all the evidence, the substance of which is above set out, the court rendered a verdict and judgment for the plaintiffs, for the value, as proved, of the lard, candy and cider, aggregating $151.35; to which judgment the defendant excepted, and now assigns the same as error, together with the several rulings on evidence to which exceptions were reserved.

HEWITT, WALKER & PORTER, and THOS. G. JONES, for appellant.

MOUNTJOY & TOMLINSON, contra.

SOMERVILLE, J.—The receipt of goods by the defendant as common carrier was a fact which could be proved by any competent evidence, without producing the bills of lading. In such a case, parol evidence is as much primary as that which is written, the nature of such evidence failing to indicate on its face that any better remains behind or undisclosed.—1 Green. Ev. § 84; 1 Whart. Ev. § 77. If, moreover, it was otherwise, the error would have been cured by the subsequent production of the bills of lading during the progress of the trial.

The book entries were also admissible to show the fact of the receipt of the merchandise. They were made by the authorized agent of the railroad company, or under his direction, in due course of his agency, and the correctness of the entries was proved by the agent himself. This constituted such entries written admissions which formed a part of the res gestœ of the fact of delivery itself.—Danner Land and Lumber Co. v. Stonewall Ins. Co., 77 Ala. 184; 1 Green. Ev. § 113; 2 Whart. Ev. § 1131.

When goods are intrusted to a common carrier for transportation, he is liable for all loss or damage, except such as may be occasioned by the act of God, the public enemy, or by the wrong or negligence of the party complaining.—A. G. S. R. R. Co. v. Little, 71 Ala. 611; South & North Ala. R. R. Co. v. Wood, 66 Ala. 167; s. c., 41 Amer. Rep. 149. He becomes pro hac vice, and to this particular extent, an insurer, and such insurance clearly covers any accidental loss by fire.

[Louisville & Nashville Railroad Co. v. McGuire & Co.]

This liability continues until the consignee has had a reasonable time, after the arrival of the goods at the place of destination, within which to remove them. After this period of time has elapsed, the liability of the carrier as such is at an end, and he is thenceforth liable only as warehouseman, or keeper for hire. Such, at least, is the rule of the common law. S. & N. Ala. R. R. Co. v. Wood, supra; Ala. & Tenn. Rivers Railroad Co. v. Kidd, 35 Ala. 209. In certain cases, the statute now requires notice to consignees of the arrival of freight; and the principle may, to this extent, be modified. But this case is not affected by the statute, so far as we can discover from the proof made in the record.—Acts of Ala. 1878–79, p. 175–176.

It is a further principle, material to this case, that where a demand is made upon a railroad company. acting as a common carrier, for goods which have arrived at their destination, and there is a failure to deliver them, without sufficient excuse, the company must continue to hold the goods at their own peril, and not at that of the consignee.—Meyer v. The Chicago & N. Railway Co., 24 Wis. 566; s. o., 1 Amer. Rep. 207; 2 Rorer on Railroads, pp. 1245–6; Wood's Railway Law, § 444.

Applying these principles to the present case, we discover no error in the conclusions reached by the City Court, either as to the facts or law. The lard was received on November 14th, 1884, and was destroyed by fire the same night. The liability of the defendant as to this merchandise was clearly that of a common carrier and not of a warehouseman, a reasonable time for removal not having elapsed at the time of its destruction. The company was an insurer against its loss by fire.

As to the candy and cider, destroyed at the same time, it is true the defendant was a mere warehouseman, or bailee for hire, in as much as the consignee had notice of their arrival, as well as ample time within which to have removed them. But, in our opinion, the testimony shows that a demand was twice made on the defendant's agent, and he failed to deliver these goods, without proper excuse—once on the tenth of November, and again on the fourteenth, the day preceding the night of the fire.

When these demands were made, the failure to deliver was not placed on the ground that the consignees owed the charges due for transportation. No mention was made of this amount, nor did the defendant claim that his neglect to deliver was on this account. Had he done so, the consignee may at once have paid the sum claimed. He could not, therefore, afterwards set up this lien, which was a mere right of retainer, as a defense to this action.

We find no error in the record, and the judgment of the City Court is affirmed.