# Louisville & Nashville R. R. Co. *v.* Oden.

*Suit for Damages against Common Carrier, for Loss of Freight.*

1. *Consignee allowed reasonable time to remove freight; when railroad company liable only as warehousemen.*—A consignee is allowed a reasonable time to remove goods after arrival at point of destination, and until expiration of such time the liability of the company, as a carrier, continues; but, on the failure of the consignee to remove them in a reasonable time, the railroad company is responsible thereafter, only as a warehouseman.

2. *What stipulation in bill of lading unreasonable.*—A stipulation in a bill of lading that the railroad company shall be liable only as a warehouseman, after the arrival of the freight at point of destination, and that the consignee shall receive and take it away as soon as it is

[Louisville & Nashville R. R. Co. v. Oden.]

ready for delivery, without providing for notice to the consignee when it is so ready for him, is unjust and unreasonable.

3. *Carrier's common-law liability may be limited by special contract.* A provision in the bill of lading exempting the railroad company from loss or damage "by fire or other casualty, while in transit, or in depots, or places of transhipment," to goods shipped, will be sustained, *except* as against losses resulting from a want of skill, or from the negligence of the agents or employees of the company.

4. *Liability for goods lost, limited to value at place of shipment, just and reasonable.*—A stipulation in the contract of shipment by the railroad company, that in the event of the loss or damage to goods the company will only be responsible for their value at the place and time of shipment, is just and reasonable.

APPEAL from Morgan Circuit Court.

Tried before the Hon. H. C. SPEAKE.

This action was brought by A. A. Oden, surviving partner of Oden & Bibb, against the Louisville and Nashville Railroad Company, to recover damages for the loss, by fire, of a bale of cotton shipped by plaintiff on defendant's railroad from Hartsell, in Morgan county, Ala., consigned to Trabrue & Co., Louisville, Ky., and was commenced on the 20th of March, 1885. Defendant pleaded specially the contract with plaintiff "that said company should not be liable for loss or damage, of said bale of cotton, by fire, while in depot at point of delivery." On this plea issue was joined.

It was shown by plaintiff that on the 4th of November, 1884, he delivered to the defendant railroad company, at Hartsell, one bale of cotton, marked O. & B., weighing five hundred pounds, to be transported by said railroad company as freight, to Louisville, Ky., and there to be delivered to Trabrue & Co., for which he received a bill of lading; that said bale of cotton was never delivered to the consignees, but was totally destroyed in the depot of defendant, at Louisville, on the night of the 9th of November, 1884. Evidence was introduced by plaintiff to show that the consignee had applied at the depot, in Louisville, on Saturday morning, before the fire, and was informed by defendant that there was no cotton for them, and that the cotton was burnt on Sunday night following. The price of the cotton at Louisville and at Hartsell was shown, and plaintiff rested. Defendant offered evidence to show that the cotton in controversy was lost by an accidental fire at the company's depot in Louisville, on Sunday night, November the 9th, 1884; that said fire and destruction of said cotton was without fault or negligence on the part of defendant, and that said cotton was unloaded at Louisville, between seven o'clock and twelve o'clock Saturday morning, the day before the fire occurred, and was ready for delivery to the consignees; that notice was posted at the depot giving information to consignees of freight received. Defendant put in evidence the bill of

lading, containing the stipulation already stated in the plea, and other provisions, that defendant should only be liable as warehouseman, after the arrival of the cotton at the depot; also, "that in the event of loss of, or damage to said bale of cotton, the loss or damage so accruing, so far as it shall fall upon the carriers, shall be computed at the value or cost of the same at the place and time of shipment under this bill of lading."

This was all the evidence. As a part of the general charge the court instructed the jury that if they found for the plaintiff, the measure of his damages was the market value of the cotton at Louisville, at the time it should have been delivered, with interest to the time of the trial. To this charge defendant excepted, and asked the court to give the following written charges: 1. "In this case, if for any reason, the consignees are not at the place to receive the cotton when unloaded from the car, and in consequence of this it is placed in the depot, the transit ceases, and the defendant will only be held to the ordinary care of warehousemen." 2. "If the jury believe the evidence they will find for the defendant." Both of these charges were refused, and defendant duly excepted, and takes this appeal, assigning for error, the charge given for plaintiff, and refusal of the court to give the charges asked by the defendant.

C. C. HARRIS and T. G. JONES, for the appellant.—1. It is the settled law in this State, as well as in Kentucky, that the common carrier may limit its common law liability by special contract. *S. & N. R, R. Co. v. Handlin*, 52 Ala., 608; *Steele & Burgess v. Townsend*, 37 Ala., 247; *L. & N. R. R. Co. v. Brownlee*, 14 Burk., 590 (Ky. Rep.).

2. The contract limited the liability of the company, in case of loss of cotton, to its value at place and time of shipment. The charge of the court as to measure of damages—the price at Louisville—was erroneous.

3. The charge numbered 1, asked by defendant should have been given. 10 Metcalf, 472; 98 Mass., 212; 1 Gray, 263; 46 Ala., 63.

W. H. SIMPSON, *contra.*—1. A common carrier must transport goods with reasonable expedition, inform the consignee of their arrival, and afford him reasonable opportunity to remove them, *Kennedy Brothers v. Mobile and Girard Railroad Co.*, 74 Ala., 430; *Hill Manufacturing Co. v. Boston and Lowell Railroad Co.*, 104 Mass., 122.

2. To excuse himself from liability from loss by fire, within the exception in a bill of lading, the carrier must show that he used diligence, and that there was no negligence on his part.

[Louisville & Nashville R. R. Co. v. Oden.]

55 Ala., 387; 37 Ala., 247; 41 Ala., 648; *Ib.* 486; 43 Ala., 385; 53 Ala., 19; 61 Ala., 545 : 75 Ala., 596.

3. Limitations or restrictions upon the liability of railroads are taken most strongly against them. 71 Ala., 616; 27 Cal., 11.

4. The railroad company was guilty of negligence in not using the fire extinguisher when the night watchman first discovered the fire "in a pile of unclaimed freight." Redfield on Carriers, 165; Story on Bailment, 601; 2 Gr. Ev., 219; Angell on Carriers, 175–81. 5. There was evidence showing negligence in the railroad company, its agents and employees; the court therefore properly refused the affirmative charge asked by defendant.

CLOPTON, J.—The defendant requested the court to instruct the jury, in substance, that if the consignees for any reason were not present to receive the cotton, when unloaded from the car, and in consequence it was placed in the depot, the transit ceased, and defendant would be held only to the care of a warehouseman. The proposition of the charge makes it incumbent on the consignee to be present, and ready to receive the freight, whenever it is taken from the car. The rule as settled in this State is, that the consignee is allowed a reasonable time to remove the goods after they arrive at the place of destination, and if not present on their arrival, the company may deposit them in its depot or warehouse for safe keeping without additional charge, until such reasonable time expires. Until the consignee has had a reasonable opportunity to remove the goods, the liability of the railroad company as a carrier continues; but on his failure to do so, the company is only responsible thereafter as a warehouseman or keeper for hire.—*Ala. & Tenn. Rivers R. R. Co. v. Kidd*, 35 Ala. 209; *S. & N. Ala. R. R. Co. v. Wood*, 66 Ala. 167; *Kennedy v. Mo. & Gir. R. R. Co.*, 74 Ala. 430; *McGuire v. L. & N. R. R. Co.* (Dec. Term 1885); 1 So. Law Times, 492. What length of time will be reasonable must of necessity depend in a great measure upon the attendant facts and circumstances, which must be submitted to the jury under proper instructions from the court. It may be generally said, that in determining what constitutes a reasonable opportunity, the convenience or necessities of the consignee will not ordinarily be taken into consideration. The question is, has suitable time been allowed to a person, living in the vicinity of the place of delivery, to remove the goods in the ordinary course and in the usual hours of business; more prompt diligence being required, if the consignee has been informed of the shipment of the goods by receipt of a duplicate bill of lading or otherwise.—Hutch. on Car., § 377.

[Louisville & Nashville R. R. Co. v. Oden.]

We presume the charge is based on a provision in the special contract, under which the cotton was shipped. It provides, that the defendant shall be liable only as warehouseman after the arrival of the cotton at the depot of delivery, and that the consignee shall receive and take it away, as soon as ready for delivery. A construction should be placed on the contract, if reasonable, which will sustain it as consonant with the law, and in so construing it, such exceptions will be construed most strongly against the defendant. It certainly is not intended, that the consignee shall take notice of the exact time of the arrival of freight, or when it is ready for delivery, and be present, prepared to receive and take it away immediately, thus requiring him to remain at the depot with means of removal, until the defendant, in the course of its business, may unload the car containing the freight, and prepare it for delivery. If the consignee has been notified, or informed in any way, when the freight will be ready for delivery, he must proceed without delay to remove it, and provide sufficient means for the purpose; but if not so notified or informed, he should be allowed suitable time, in which to ascertain the fact, which is peculiarly within the knowledge of the defendant. Without considering whether a railroad company may, by special contract, terminate its liability as a carrier at a time earlier than fixed by law for its continuance, it suffices that a provision, which terminates such liability at the time the freight is ready for delivery, on the failure of the consignee to at once receive and remove it, without notice when it would be ready for delivery, would be unjust and unreasonable. Neither by the law, nor by the contract properly construed, was the liability of the defendant converted into that of a warehouseman, on the failure of the consignees, for a sufficient reason, to be present to receive the cotton when the car was unloaded. In this case, it appears, that the cotton arrived at Louisville on the evening of the 7th of November; and if the evidence of the teamster be believed, he inquired, on the morning of the next day, for freight for the consignees of the cotton, and was informed there was none. If this be true, it was incumbent on the defendants to have corrected this mis-information, when it was discovered that cotton had arrived the previous evening consigned to them, or at least, they should be allowed a reasonable opportunity to ascertain and remove it, before the liability of the carrier could terminate.

The special contract contained a further provision, which exempted the defendant from liability for loss or damage "by fire or other casualty, while in transit, or while in depots, or places of transhipment, or at depots or landings at points of delivery." While public policy and considerations of right

and justice forbid that the defendant may stipulate for exemption from liability for loss or injury resulting from a want of skill, or from the negligence of its agents or employees, it is well settled that the common law liability as an insurer may be limited and qualified by special contract. A carrier of goods is, by the common law, absolutely liable for safe delivery, unless prevented by the act of God, of the public enemy, or of the party complaining, and to this extent is an insurer against fire. Against this extraordinary risk he may protect himself, unless his want of skill or negligence contributed to the consumption of the goods.—*Grey v. Mo. Trade Co.*, 55 Ala. 397; *L. R. & M. Riv. & Texas Ry. v. Harper*, 44 Ark. 208; *Chi. St. L. & N. W. R. R. Co. v. Moss*, 61 Miss. 1003. If it is found that the liability of the defendant, at the time the cotton was burned, is that of a warehousman, the burden is on the plaintiff to show that the burning was in consequence of the negligence of the defendant; but if the liability as a carrier had not terminated, it is incumbent on the defendant to show, that the burning was without negligence on its part.—*East Tenn. Va. & Ga. R. R. Co. v. Johnson*, 75 Ala. 596; *L. & N. R. R. Co. v. Henlein*, 52 Ala. 606. The true interpretation of the rule is stated in *Steele & Burgess v. Townsend*, 37 Ala. 247: "The correct view is, that the loss is not brought within the exception, unless it appears to have occurred without negligence on the part of the carrier; and as it is for the carrier to bring himself within the exception, he must make at least a *prima facie* case, showing that the injury was not caused by his neglect;" and we may add, if the evidence is in equipoise, the case is not brought within the exception.

The question as to the liability of the defendant for the burning of the cotton, so far as appears, was only raised by an affirmative charge requested by the defendant. Whether the liability of the defendant as a common carrier had or not terminated is immaterial in this respect; for having protected itself against responsibility as an insurer against fire, its liability, whether as a carrier or warehouseman, depends on a want of ordinary care, skill, and diligence. The defendant was bound to exercise ordinary skill and diligence in transporting the cotton, as also in providing a depository. If the defendant by the use of ordinary diligence and in the usual and regular course of its freight business could have transported the cotton to Louisville in time to have prevented its burning, or by ordinary prudence and vigilance could have avoided or extinguished the fire before the cotton was consumed, it is responsible for the loss. *L. & N. R. R. Co. v. Brownlee*, 14 Bush., 590. Not intimating an opinion as to the sufficiency of the evidence, there were facts to be inferred from it, which were material to the deci-

sion of the case; and however slight may be the evidence, it would have been error to have given the charge, and thus withdraw the inferences from the consideration of the jury. *S. & N. Ala. R. R. Co. v. Small*, 70 Ala., 499.

It is further stipulated by the special contract, that the amount of the loss or damage, in the event the defendant is held liable, shall be computed on the value of the goods at the place and time of shipment. In *L. & N. R. R. Co. v. Henlein*, 52 Ala., 606, a stipulation, that if loss or injury should occur for which the company is liable, the amount claimed should not exceed fifty dollars for any one of the animals transported, was sustained as just and reasonable, and as the measure of the company's liability. In the same case, 55 Ala., 368, this ruling was adhered to. The stipulation was sustained on the grounds that the amount fixed was not greatly disproportionate to the real value of the animal and amount of freight charged, and was intended to adjust the measure of liability to the reduced rate of freight charged, and to protect the carrier against exaggerated or fanciful valuations. In the present case, no consideration is expressed. In the absence of evidence, a sufficient consideration will be presumed; and generally the payment of a stipulated price is a sufficient consideration to support an agreement to transport the freight on stipulated terms as to responsibility. *York Co. v. Cen. R. R. Co.* 3 Wal., 107. The common law measure of a carrier's liability is the value of the freight at the place of delivery, and at the time when it ought reasonably to have been delivered. Against this extent of liability he may not stipulate as to losses occurring by the want of due care, skill, and diligence in respect to the ordinary, usual, and general risks of the mode of transportation; but may limit the measure of his liability as to losses caused by the extraordinary risks, in respect to which he is regarded as an insurer. *Ala. G. S. R. R. Co. v. Little*, 71 Ala., 611. The stipulation of the contract limiting the measure of liability as to the value at the time and place of shipment in respect to loss occasioned by fire, does not fix the amount greatly disproportionate to the real value of the cotton at the place of destination, was probably intended to protect the company against unexpected fluctuations in the market prices, and is just and reasonable. *Harvey T. H. & Ind. R. R. Co.*, 6 Am. & Eng. R. R. Cas., 293; *Kan. C. St. Jos. & C. B. R. R. Co. v. Simpson*, 16 Am. & Eng. R. R. Cas., 158. The court erred in instructing the jury that the measure of damages is the market value of the cotton at Louisville, the place of destination.

Reversed and remanded.