# Western Railway of Ala. v. Little.

*Action against Railroad Company, as Common Carrier, for Loss of Goods destroyed by Fire.*

1. *Liability of railroad company, as common carrier, for loss of goods destroyed by fire at depot of destination.*—The rule is settled by the decisions of this court, that the liability of a railroad company, as a common carrier, continues after the goods have been carried to the place of destination and stored in the depot, until the consignee (owner) has had notice and a reasonable time to remove them, after which it is only liable as a warehouseman; yet it may stipulate, by special contract, that its liability as carrier shall cease when the goods have been stored in its depot at the place of destination, being afterwards liable only as warehouseman.

2. *Relevancy of evidence as to habits of agent.*—In an action against a railroad company, as a common carrier, for the loss of goods destroyed by fire in its depot at the place of destination, evidence can not be received as to the intemperate habits of the depot agent, nor of the fact that he was found to be a defaulter soon afterwards, nor as to the bad character of the servant employed at the depot, unless some connection is shown between these facts and the fire.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. Jesse M. CARMICHAEL.

This action was brought by C. E. Little against the appellant corporation, to recover damages for the loss of goods which were destroyed by fire in the defendant's depot at Auburn, on Sunday night, October 10th, 1886; and was commenced on the 4th January, 1887. The goods were bought by the plaintiff in Montgomery, and were delivered to the defendant for transportation to Auburn, where they arrived on Sunday morning, October 9th, between the hours

of ten and eleven o'clock; and they were there stored in the defendant's depot, where they were destroyed by fire on the next night, together with the depot building. The bill of lading contained a special stipulation, which is copied in the opinion of the court, and the validity and effect of which, under the rulings of the court below, presents the main points decided by this court. The court below allowed the plaintiff to prove, against the objections and exceptions of the defendant, the intemperate habits of the defendant's depot agent at Auburn, the fact that he was ascertained to be a defaulter soon after the fire occurred, and the bad character of the servant employed at the depot, not stating in what particulars. These rulings on the evidence, with the charges given by the court, and the refusal of several charges asked by the defendant, are now assigned as error.

GEO. P. HARRISON, for appellant, cited *Railroad Co. v. Kidd*, 35 Ala. 209; *Wood v. L. & N. Railroad Co.*, 66 Ala. 167; Redfield on Railroads, vol. 2, pp. 75-7; Hutchinson on Carriers, §§ 367-77; *M. & G. Railroad Co. v. Prewitt*, 46 Ala. 63; 9 Amer. & Eng. R. R. Cases, 249, 161; 7 *Ib.* 404, note; 2 Amer. & Eng. Cyc. Law, 878.

W. J. SAMFORD, *contra*, cited *L. & N. Railroad Co. v. McGuire & Co.*, 79 Ala. 398; *Ala. Gr. So. Railroad Co. v. Smith*, 71 Ala. 611-14.

CLOPTON, J.—The goods, to recover the value of which this action is brought by appellee, were transported by defendant, October 9, 1886, from Montgomery to Auburn, Alabama, the latter being the place to which they were consigned. They arrived at the point of destination, and were stored in the company's depot, by eleven o'clock of the same day. During the night of the next day, the depot was burned, and the goods destroyed. The bill of lading, under which they were shipped, contained a stipulation, that the company will not "hold themselves liable for damages (either from fire or other cause), as common carriers, for any article, after it has been transported to its place of destination, and been placed in the depot of the company." The court, though holding that the stipulation is not opposed to public policy, also held that it did not operate to terminate the company's responsibility as carrier, until plaintiff had been allowed a

reasonable time to remove the goods after their arrival and storage.

In *L. & N. R. R. Co. v. Oden*, 80 Ala. 38, we ruled, that a special contract, by which the company's liability as a common carrier was terminated on the arrival of the freight at the depot, and the failure of the consignee to receive and remove it as soon as ready for delivery, without notice, was unjust and unreasonable; but pretermitted an expression of opinion (a decision of the question not being required by the case), whether a railroad company may, by special contract, terminate its liability as carrier at a time earlier than that fixed by law for its continuance. The question is now directly presented, both by demurrer to pleas, and instructions to the jury. Appellee contends, that the provision in the bill of lading comes within the rule which forbids a common carrier to contract for exemption from liability for damages caused by his own negligence. We do not so interpret the stipulation. It does not purport to release the company from any risk whatever, ordinary or extraordinary, attached by law to the employment of a common carrier, while the goods are *in transitu*. The intention and effect are to fix a period, after the transportation is complete, when the goods pass from the custody of the company as a carrier, to their keeping as warehousemen.

The principles involved, and on which the solution of the question now coming before the court for the first time depends, are neither new nor difficult. They have been heretofore considered and settled in analogous cases. It has been held, that in the case of a carrier by water, the general rule governing the delivery of the goods may be varied by contract, or by a reasonable, well-established, and generally known local custom, constituting an implied term of the contract of shipment.—*Houston v. Peters*, 1 Met. (Ky.) 557. Former decisions of this court can be maintained only on the ground, that a railroad company may, by special contract, or the usages of the business, govern the manner of delivering freight, and the period after the transportation is complete, at which their responsibility as carrier ceases. In *S. & N. Ala. R. R. Co. v. Wood*, 65 Ala. 167, the corn received for transportation was consigned to a "flag-station", where the company had neither agent nor depot, of which the consignee was informed. The car, containing the corn, was placed on a side-track at the station. It was held, that railroad companies, not being required by law to construct a

warehouse or depot at every station on its line, and the consignee being advised, at the time of the shipment, that there is no agent or depot, and that the exigencies of the business do not require the company to keep an agent or depot, at the station to which the goods are consigned, there is an implied consent, that the carrier's responsibility shall cease on delivery of the goods according to the reasonable and proper usage of the business, and that the liability as a carrier terminated with the safe delivery of the car on the side-track, and that there was no assumption of liability as warehousemen. It is said: "We can see no reason why a railroad company, acting as a common carrier, can not stipulate, by a contract, express or implied, that their liability as a carrier shall terminate with a delivery at a particular point; and that they will assume no liability as warehousemen." As to stations where there are agents or depots, it is remarked, that the rule governing the liability of railroad companies, whether as carrier or warehousemen, is correctly stated in *Ala. & Tenn. River R. R. Co. v. Kidd*, 45 Ala. 209.

In the case last mentioned, the contract of the company was to deliver the goods *to their own agent*. It was held, that by the contract of shipment, the company impliedly agreed to act as consignee of the owner, and imposed upon themselves, not only the duty of safely carrying to the place of destination, but also of keeping the goods after their arrival, until called for. by the owner; for the performance of the former duty they were responsible as carriers, and for the discharge of the latter as warehousemen. It is said: "If we do not adopt this construction, then the duties of the company were precisely the same as if the cotton had been consigned to the owner himself, and no special purpose was either designed or accomplished by making the agent of the company the consignee." The decision rests on the principle, that a railroad company may contract for the cessation of their responsibility as carrier by a delivery to their own agent—that is, to themselves.

In *Buckley v. Gr. Wes. Railway Co.*, 18 Mich. 121, where it was ruled, that, in the absence of usage, special circumstances or agreement, the liability of railroad companies for goods in warehouses awaiting delivery is that of common carrier, the court said: "The course to be pursued by the carrier, to shield himself from further responsibility in his quality of carrier, where the transportation is accomplished, is not the subject of abstract law, disconnected from the sur-

rounding circumstances, but is a matter depending upon contract, and to be determined by reference to the express stipulations of the parties, or the varying facts from which, when presented, the law will infer the rights, duties and obligations of the parties."

There is no incompatibility in a railroad company being both carrier and warehousemen, but it can not have custody in both capacities of the same property at the same time. Neither is there any inconsistency in passing goods from themselves as carriers, to themselves as warehousemen. By the settled rule in this State, though the railroad company continues responsible as a common carrier after the goods have been transported to their place of destination, and stored in the depot, until the consignee or owner has had reasonable opportunity to remove them; yet, when a reasonable time has elapsed, they become, by operation of law, warehousemen—the law, by its operation, passes the goods from them as carrier, to them as warehousemen. There can be no sufficient reason, why the consignor and the company may not stipulate, that the former waives the goods remaining in store a reasonable time, and that the company's responsibility as carrier shall cease on storing them in their depot, and thereafter they become liable as warehousemen.

The courts of many other States, and doubtful if not the weight of authority, maintain the rule, that from the necessary manner in which the business of railroad companies is conducted, and from their custom to have platforms on which to place, and warehouses or depots in which to store goods carried, the company discharges its whole duty as a carrier, when it stores the goods in the warehouse or depot, to keep until called for, if the consignee or owner is not there to receive them; and that such delivery, from themselves as common carriers, to themselves as keepers for hire, terminates their responsibility as common carriers; that in such case the company ceases to be a common carrier, on the completion of the duty of transportation, as matter of law, and assumes, as matter of fact, the character of warehousemen. *Rice v. Hart*, 118 Mass. 201; *Gashweiler v. Wabash, St. L. & Pac. R. R. Co.*, 83 Mo. 112; *Rothschild v. Mich. & Cen. R. R. Co.*, 69 Ill. 164; *McCarty v. N. Y. & Erie R. R. Co.*, 30 Penn. St. 247; *Mohr & Smith v. C. & N. W. R. R. Co.*, 40 Iowa, 580; *Butler v. E. T. & Va. R. R.*, 8 Lea, 32. This rule certainly has the merit of being definite and easy of application. Certainly, a stipulation which terminates

the company's responsibility as carrier, on the completion of the transportation and storage of the goods in the depot—a contractual regulation of the place, time and manner of delivery,—substituting a rule sustained by courts of the highest authority for the rule established in this State—can not be regarded as opposed to law or public policy.

By the terms of the bill of lading, the defendant's responsibility as a common carrier terminated, when the goods were transported to Auburn, and safely stored in the depot. The liability thereafter was that of a warehouseman.

We are unable to discover the relevancy of the evidence as to the agent's habits, unless connected with evidence showing such notoriety that knowledge of the company may be inferred, or showing some causal connection between his habits and the destruction of the goods. The same observation applies to the evidence of the bad character of the servant employed at the depot, without stating in what respect it is bad, so as to show its relevancy. The statement of the agent to McElhaney was also inadmissible. It did not relate in any way to the fire, or to the goods of plaintiff, and was but a narrative of a past event.

Reversed and remanded.