# Columbus and Western Railway Co. v. Ludden & Bates.

*Action against Railroad Company as Common Carrier, by Consignor of Goods.*

1. *Liability of railroad company as common carrier; ceases when.* Under the decisions of this court, the liability of a railroad company as a common carrier, for goods transported over its road, does not cease on the arrival of the goods at their destination, and their deposit there in a warehouse, but continues until the lapse of a reasonable time for the removal of the goods by the consignee; and its liability as a warehouseman does not begin, until its liability as a common carrier has ceased.

2. *Same; notice to consignee.*—Except in places governed by statutory provisions (Code, § 1180), notice to the consignee of the arrival of

[Columbus and Western R'y Co. v. Ludden & Bates.]

the goods is not necessary before the liability of the carrier can be changed to that of warehouse-man.

3. *Same; reasonable time for removal of goods.*—What is a reasonable time for the removal of the goods from the railroad depot, is a question of law for the court, when the facts are undisputed; and in its determination, the convenience or necessities of the consignee, the proximity or remoteness of his residence or place of business from the depot, can not be considered.

4. *Same; case at bar.*—In this case, a piano being forwarded over the defendant's road, from Columbus, Georgia, to Goodwater, Alabama, consigned to a person who lived twenty-eight miles from that town; *held,* that three days was a reasonable time for its removal, after which the railroad company was liable only as a warehouse-man.

5. *Same; custom as to giving notice.*—A valid custom may exist, binding on the railroad company, to give notice of the arrival of goods to consignees residing in a village twenty miles or more from the town in which the depot is situated, although the custom does not prevail in that town; and such custom may be established by the practice of the agent, without instructions from his principal; but it is not established by proof that the agent gave notice occasionally, or "about as often as not," nor by the fact that he gave notice to consignees when goods accumulated in unusual quantities.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JESSE M. CARMICHAEL.

This action was brought by Ludden & Bates, suing as partners, against the appellant corporation, to recover damages for the loss of a piano, which was destroyed by fire while in the defendant's depot, or warehouse, on the night of February 19th, 1884; and was commenced on the 13th March, 1886. The complaint contained a count against the defendant as a common carrier, and another as warehouse-man. The pleadings were protracted, but they require no special notice. The piano was forwarded by the plaintiffs, over the defendant's road, on the 13th February, 1884, from Columbus, Georgia, to Goodwater, Alabama, consigned to Miss M. A. Bayne, who lived in Lineville, about twenty-eight miles distant from Goodwater. Under the rulings of the court on the trial, the plaintiffs had a verdict and judgment for $457.75. The defendant reserved numerous exceptions to the rulings of the court on the admissibility of evidence, charges given, and the refusal of charges asked; and all these rulings, twenty-nine in number, are now assigned as error. The points decided by this court require no statement of the facts in detail.

HARRISON & LIGON, for appellant, argued all the assignments of error, and cited the following cases: *Railroad Co. v. Kidd,* 35 Ala. 209; *Railroad Co. v. Prewitt,* 46 Ala. 63; *Kennedy Bros. v. Railroad Co.,* 74 Ala. 430; 9 Amer.

[Columbus and Western R'y Co. v. Ludden & Bates.]

& E. R.ιR. Cases, 249; 21 *Ib.* 145; 25 *Ib.* 403; 7 *Ib.* 404; 2 Redf. Railways, 75-7; Hutch. Carriers, §§ 367-70; 2 Amer. & E. Encyc. Law, 878.

JNO. M. CHILTON, *contra,*

McCLELLAN, J.—It has been supposed by some text-writers and annotators that this court, following that line of authority on the subject of which *Norway Plains Co. v. Boston Railway Co.* (1 Gray, 163) is the leading case, has adopted the rule, that the extraordinary liability of a railway company, as a common carrier of goods, ceases when the consignment arrives at its destination, is unloaded from the cars, and nothing further, so far as the transit is concerned, remains to be done by the carrier; and that thereafter the liability of the carrier is that only of a warehouse-man for hire. This supposition is based on an interpretation of the opinion in the case of *Ala. & Tenn. Rivers R. R. Co. v. Kidd,* 35 Ala. 209, which has never obtained in this court, or been entertained by the profession here. That case has always been construed by this court to sustain the rule which extends the liability, as such, for a reasonable time, after the transit has been completed, for delivery of goods to consignees.—*L. & N. R. R. Co. v. McGuire,* 79 Ala. 395. And our later decisions fully support the rule, first announced by the Supreme Court of New Hampshire in the case of *Moses v. Boston R. R. Co.,* 32 N. H. 523, and ably vindicated by Justice Cooley in *Milligan v. Michigan Railway Co.,* 16 Mich. 79, and now recognized by text-writers, and by many courts of last resort, as sound in principle, that the liability of a common carrier by rail, as an insurer of the consignment, continues throughout the transit, and until the goods have been unloaded from the cars, and deposited in the depot or warehouse of the carrier, or otherwise made ready for delivery, and a reasonable time thereafter has elapsed to afford the consignee an opportunity to come and take them away; and that only after the lapse of a reasonable time, beginning when the transit is complete, and the shipment is ready for delivery, will the liability, in the absence of special stipulation, of the carrier as such, be converted into the less rigid and exacting liability of a warehouse-man for reward.—Hutchinson on Carriers, § 373; 2 Redfield on Railways, pp. 79-82; *So. Ex. Co. v. Armistead,* 50 Ala. 350; *Kennedy v. Mobile & Girard R. R. Co.,* 74 Ala. 430; s. c., 21 Amer. & Eng. R. R. Cas. 145;

*L. & N. R. R. Co. v. McGuire,* 79 Ala. 395; *A. G. S. R. R. Co. v. Grabfelder,* 83 Ala. 200; *West. Railway of Ala. v. Little,* 86 Ala. 159.

There is also great conflict of authority, whether notice of the arrival of goods at the point of destination should be given to the consignee by the carrier, before the reasonable time within which the extraordinary liability will continue begins to run; or, in other words, whether the relation of carrier to the property gives place to that of warehouse-man, in any case, until such notice has been given, and opportunity afforded to the consignee to receive and take away the consignment. In this State, however, the rule is settled, certainly in all cases where the delivery is not to be made at a town of two thousand inhabitants, having a daily mail delivery (as to which there is a statutory provision—Code, § 1180), that no such notice is necessary, and that the change in the degree of the railway's liability will be effected by the lapse of a reasonable time for the property to be taken away, in the absence of notice.—*West. Railway of Ala. v. Little, supra;* *S. & N. Ala. R. R. Co. v. Wood,* 66 Ala. 167; *L. & N. R. R. Co. v. Oden,* 80 Ala. 38.

Where the evidence on the point, as to the length of time which has elapsed from the arrival and unloading of the goods, to the time at which it is claimed the liability as common carrier ceased, and that of warehouse-man attached, is without conflict, the question should not be submitted to the jury, but is one of law for the determination of the court. Hutchinson on Carriers, § 376; Redfield on Railways, pp. 75–76; *Roth v. Buffalo R. R. Co.* 34 N. Y. 548.

In the case at bar, there was a conflict in the evidence, as to the length of time elapsing between the arrival of the property and its destruction by fire, one aspect of the testimony showing the lapse of six days, and the other three days. There was no conflict as to the fact, that the goods had been kept by defendant in its warehouse, ready for delivery, as long as three days; nor was the testimony at all conflicting as to any other fact—as, for instance, the length of the carriage, or other circumstances bearing on the question as to whether the consignment might have been expected to arrive at any definite date, the character of the goods, &c.— proper to be looked to in determining whether the consignee had had a reasonable time to have taken the property before the fire which destroyed it. The submission of this matter to the jury, therefore, can only be justified on the theory,

that six days was such reasonable time, and three days was not; since, if no period which the evidence tended to show was sufficiently long, the court should, as a matter of law, have held the defendant to the liability of a common carrier; and if any period which all the testimony concurred in establishing was sufficiently long, in like manner the court should have held, aside from custom, that the liability as insurer had ceased, and that of bailee had begun. In determining the question, as to how long the carrier's liability as such will continue, after the property has reached its destination and is ready for delivery, the peculiar circumstances and environment of the consignee can not be considered. His convenience or necessities, the proximity or remoteness of his residence or place of business to the point of consignment, are matters of no importance in reaching a conclusion on this point. The law proceeds, not unreasonably, on the assumption that he has been already advised of the shipment, and wherever he lives, or engages in business, he will seasonably appear, and claim and remove his property. So that it is not of moment in this case, that the consignee resided at a distance of twenty-eight miles from the place of delivery.—Hutchinson on Carriers, § 377; *S. & N. Ala. R. R. Co. v. Wood*, 66 Ala. 172; *L. & N. R. R. Co. v. Oden*, 80 Ala. 41. Her rights, and the degree of the responsibility resting on the defendant, were the same in all respects as if she had resided in the town of Goodwater, to which the shipment was made. The point, then, may be treated as upon these facts: The consignee had contracted with plaintiffs to ship to her, from Columbus, Ga., over the road of the defendant, a piano and piano-stool, for delivery to her at Goodwater, Ala. The distance was comparatively short, and the entire carriage over one continuous line of railway, so that the arrival of the goods at the point of destination might reasonably have been expected on the day, or the day after the shipment. The character of the property was such that its removal from defendant's depot would have been one act, involving scarcely one hour of time. It was allowed to remain there at least three days. On these facts, none of which are disputed, our opinion is, that a reasonable time for the consignee to have received and removed the property had elapsed before its destruction, and that, of consequence, at the time of the fire, it was held by the defendant as a warehouse-man, and not as a carrier. Several of the rulings below, predicated solely on the facts stated above in this

connection, and without reference to a certain custom to be hereafter considered, are not in harmony with these views.

The custom, to which casual reference has been made, and which was relied on to expand the time within which the extraordinary liabilility as common carrier would continue, was in regard to the giving of notice to persons residing at Lineville, the place of consignee's residence, and at other places away from Goodwater, for whom consignments were made to that place. It was alleged that a custom to that effect did exist, and had existed in the conduct of the Goodwater office, in such sort as that the consignee had a right to rely upon the notice being given her in this instance, as a part of the contract of affreightment, and was consequently under no obligation to go to defendant's depot for this property until she had been so notified. It is not denied that a custom to give notices of this kind, properly established by the evidence, would have the effect here claimed. If, however, the proof fails to show that the usage has existed for such a length of time, and has been so uniformly acted upon as to have become established and generally known throughout the community having dealings with the office involving a resort to it, it can not be looked to in determining the contractual rights of parties.—Hutchinson on Carriers, §§ 40, 366; Story on Bailments, § 543; Redfield on Railways, pp. 155–157; *M. & E. Railway Co. v. Kolb*, 73 Ala. 396; *Melburne v. L. & N. R. R. Co.*, 88 Ala. 443; 6 So. Rep. 762.

We apprehend that the fact that a custom to give notice obtains only with respect to consignees living beyond the immediate vicinity of the point of destination, will not vitiate it when relied on against the carriers, whatever might be the effect, on considerations of public policy operating against discriminations, when invoked in the carrier's favor. When an usage and course of dealing has long obtained, and been so substantially universal in respect to the inhabitants of a particular town or towns that they have a right to expect a continuance, and predicate their action or non-action, in a given instance, on such well grounded expectation, we are not prepared to say that the carrier may defend against any right, which would have been theirs had the custom been a good one in all respects, merely on the ground that it was bad in that it was not of universal application. Hence, if the custom under consideration was well established, as to consignees residing at Lineville, in such manner that they

[Columbus and Western R'y Co. v. Ludden & Bates.]

were not expected, and it was not their practice, to remove their goods until notice of arrival had been given them, the common-carrier liability of the railway company would continue for a reasonable time after such notice, and this notwithstanding the usage did not obtain in regard to Goodwater. But, however universal, in territorial application, long established, and well known the usage, if it only be resorted to by the carrier for his own convenience in relieving an overcrowded warehouse, and only when there is an unusual accumulation of property in its depot awaiting delivery therefrom, the custom can not be looked to as a part of the contract of shipment, having the effect to extend the period of the carrier's extraordinary liability. The purpose of notice, of the character, and given under the circumstances last supposed, it would seem, is not advice to the consignees of the arrival of goods, with a view to delivery *by the carrier*, but to facilitate delivery *by the warehouse-man, the carrier's* responsibility having ceased. Again, the fact that defendant's agent occasionally, or "about as often as not," gave the notice in question, would not be sufficient to establish the existence, much less the notoriety, of a custom which would have authorized the consignee in this case to forego that diligence in removing her property, which, we have seen, the law, apart from usage, required of her. On the other hand, neither the fact that the alleged custom was of the agent's own adoption, without instruction from his principal, nor that it was sometimes departed from and notice pretermitted, would have the effect of vitiating the usage. Whether any custom was shown, and if shown, whether it was of a character to extend the carrier's liability as an insurer of the property, for a reasonable time after notice given, were questions for the jury, as instructed by the court under the facts adduced, there being some evidence which tended to show such a course of dealing as would have the effect relied on by the plaintiffs.

If such a custom was not shown, the liability of the defendant, at the time of the destruction of the goods, was that only of a warehouse-man for hire; and the degree of care which the law imposed upon it as warehouse-man, was that only which an ordinarily prudent and diligent man would bestow upon his own property.

We deem it unnecessary to consider the various exceptions reserved in detail. We find no error—at least, none which was of injury to the appellant—in the rulings of the trial

court on demurrer to the pleadings, or in reference to the admission of testimony. There was error, however, in several particulars with respect to the giving and refusing to give instructions to the jury. What we have said will furnish sufficient guidance for the court in charging the jury on a re-trial of the cause.

The judgment of the Circuit Court is reversed, and the cause remanded.