THE AMERICAN EXPRESS COMPANY, Appellant, *v.* HEMAN BALDWIN, Appellee.

APPEAL FROM COOK.

An express company will be liable for loss, where it appears that its agent locked money entrusted to it in a safe, but took so little and such bad care of the keys, that a burglar had easy access to them and stole the keys and money.

If it appears that express companies do deliver packages before entry on the delivery book, nevertheless there must be an actual delivery, or an offer to deliver, before they can be released from liability as common carriers.

THE facts are generally stated in.the case as formerly reported in volume 23, page 197.

The following facts were ' shown on the second trial, by the agent of the company:

After the messenger arrived that day, I checked in his run, by comparing his packages with the waybills, to see if they were correct. After checking in the run, packages that I knew could be delivered were entered on the delivery book. This package to Baldwin was not so entered. I put the package back into the safe. After delivering all the packages he could, the delivering agent came back to the office and I settled with him. The last thing I did in the office that day was to make out waybills for out-freight to go by the train at 6½ o'clock the next morning; then went home; was satisfied the safe was locked when I left it; also the office.

After getting my tea, I had occasion to go up town, and called at express office; I unlocked the door, and locked it again, and put the key in my coat pocket; it was a large cumbersome key; when I locked the safe, I put the key in my pantaloons pocket. Went to the bakery and the market and then home, and soon went to bed. Always hung my coat at the bedroom door in the dining room; my pants and other clothes on the bedpost at the foot of the bed; did not take the keys out of my clothes when I retired. The dining room was in the rear part of the house, next to an alley on the side of the house, and a door opened out of dining room into alley; side of main part of house was on the alley; was a wing back of main part of house, in which was a kitchen; between side of kitchen and line of alley was

a space of six or eight feet; there were two windows in dining room; one opened into the alley, the other into space between alley and kitchen; under back window of dining room was a sloping, outside cellar door; 'tis about eighteen inches from top of cellar door to bottom of window sill; from bottom of window, in the alley, to the ground, is about two feet.

The bedroom opened out of dining room, and was opposite dining room door that opened out of alley. The parlor was in front, and there was a bedroom off that, same as the one from dining room; is one window in the bedroom in which I slept, nearly opposite the dining room door, which window is about two feet from ground; is also a door out of dining room into kitchen; also one into parlor. Front door of house opened directly into parlor; are two doors leading out of kitchen; one out of doors and the other into woodshed; is a little yard in front of house, as long as house is wide; on opposite side of house from alley were no fences, but several open lots, and there were no fences at rear of house; there was a fence leading down line of alley, and ground on side and rear of house was covered with thicket of young oak trees. Dining room and bedroom occupied width of house in rear, and parlor and bedroom in front.

It wasn't my custom to shut my bedroom door on going to bed. Window in dining room over cellar door was shoved up, and window in bedroom was open; was a warm night, quite warm. Nothing occurred during the night that I know of; was then, and am still, in the habit of sleeping very sound; do not awake unless a person speaks to me. I got up at about six next morning; on getting up, had the impression that I had overslept myself; hurried on my clothes and started to the office, which I found open and the blinds down.

I went into office as usual, and walked behind the counter; knowing it was about time for the messenger to start, I put my hand into my pocket for my safe key, walking up in front of safe; when I got to safe, missed my key; thought that perhaps I had misplaced it, and felt in my other pockets at same time; in feeling for safe key, found that I had lost the door key; I began to look at the office to see in what condition it was; I found the money was gone, and safe empty, except some papers of no value; the package to Baldwin was gone. Before the safe was opened, I telegraphed to Milwaukee and Chicago that my keys were gone, and it was supposed that the office was robbed. As soon as the safe was opened, I telegraphed that the safe was opened and its contents gone. Have never seen the keys nor any of the money since.

It also appeared in proof on this trial, that making entries on

33

delivery books, and taking receipts on the books, are not essential to prepare an article to be ready for delivery; it may be delivered without such entry; it is a matter of convenience; there is an office delivery book, and a street delivery book; one is for packages delivered from the office; if they are valuable, they lie in the safe until the party calls. They are never entered upon the books until the party does call; they are entered and receipted the day he calls for them; the other book is for packages delivered on the street; if they are not so delivered, they are returned to the office, and there lie for delivery on the office book, whenever the party calls for them. Articles that are intended for delivery at the office, are not put on the street delivery book; articles are ready for delivery when they are received and checked into the office.

SCATES, MCALLISTER & JEWETT, for Appellant.

S. W. FULLER, and M. BLANCHARD, for Appellee.

CATON, C. J. Upon the question of delivery, the evidence in this record differs from that in the same case reported 23 Ill. 197, in this, that in that case the proof showed that the package was not ready for delivery till it was duly entered in the delivery book, whereas on this trial, the witnesses testify that according to the course of business in express companies, a package may be ready for delivery before such entry is made; but upon the question of the actual delivery, or offer to deliver this package, the evidence upon this trial did not differ materially from what it was on the former trial, and there we held that there was no delivery or offer to deliver, so as to discharge the defendant from the liability of a common carrier, and this, too, independently of the want of an entry of the package on the delivery book. We are still of the same opinion, but think it would be superfluous to add anything on this subject to what was then said.

But even admitting that the defendant was only liable as a common bailee, or warehouseman, it was bound to the exercise of ordinary care for the safe keeping of the package. This we think was manifestly wanting. The package was placed in the safe by Douglass, which he locked, and placed the key in his pantaloons pocket. Then he closed the office in which the safe was, and placed the office key in his coat pocket, and left the premises for the night. When he retired for the night, he hung his pantaloons on the bedpost and his coat behind an open door in an adjoining room. His bedroom was on the ground floor, with a window opening upon open ground, and not more than two feet from the ground. It was a warm night, and this win-

dow was left open. He was a sound sleeper, and was not easily awakened unless spoken to. During that night, the keys were taken from his pockets, the office and safe opened, and the money stolen. All this in the city of Madison, the capital of Wisconsin.

Now, the bare statement of these facts shows gross negligence in the care of this money. The window was opened to the burglar and the thief, and he was, by the tempting prize always supposed to be in an express safe, invited to walk in. It is of little use to lock a safe or a door, unless the key is protected with reasonable care.

We approve of the judgment, and it must be affirmed.

*Judgment affirmed.*