## Union Express Co. *versus* Ohleman et al.

1. Express companies are common carriers and are generally held to personal delivery, either at the residence or place of business, of the consignee. They should carry goods to their destination within a reasonable time, and deliver them as soon as practicable within business hours.

2. Goods were sent by A. directed to B. at M. They were delivered to the express company's agent on Thursday and should have reached their destination the same day. They were sent by a circuitous route and did not arrive at M. until Saturday evening about six o'clock. About two o'clock on Saturday afternoon B. called at the office for the goods, and was informed there were none there. B. lived about one hundred rods from the express office in M., had lived there for a year, and was well known. No effort was made to deliver the goods to him nor any notice given of their arrival. They remained in the express office until Tuesday night when they were consumed in a fire. *Held*, that the company was liable for their loss.

November 27th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1879, No. 216.

Appeal from the judgment of a justice of the peace, wherein Ohleman & Kingsbacher were plaintiffs and the Union Express Company defendants. The suit was to recover for the loss of a package of goods.

The facts in the case were few and substantially undisputed. On Thursday the 26th of March 1876, Ohleman & Kingsbacher delivered to the Union Express Company at Conneautville the goods in question, consigned to Benjamin McMahon, at Millerstown. The property was valued at $40, and this amount was to be collected on delivery. The goods, according to the testimony of Ohleman, should have reached their destination on the day they were delivered to the company. They did reach Millerstown on

SUPREME COURT

[Union Express Co. *v.* Ohleman.]

the next Saturday at five or six o'clock, according to the testimony of the agent of the express company. On the afternoon of that day McMahon called at the express office for the goods, and was informed that they were not there. Millerstown is a small village and McMahon was well known in the place and had been living within a hundred rods of the office of the company for one year previous to the fire. The company made no effort to find the consignee or to deliver the goods, and on Tuesday night or Wednesday morning after the delivery of the goods they were burned in the warehouse of the company.

At the trial before Taylor, P. J., the defendant offered in evidence a blank receipt, and proposed to prove by its agent that it was the usual form of receipt used by the company before, since and at the time these goods were shipped. The court rejected the offer, but allowed the plaintiff to show what the receipt was which the plaintiffs took.

The defendant submitted the following points to which are appended the answers of the court.

1. That at the time the loss of the package occurred, the responsibility of the defendant, as a common carrier, had ceased, and that of a warehouseman attached, and as such it is only liable for gross negligence, of which there is no evidence to submit to the jury, and the verdict must be for the defendant.

Ans. " We answer this point in the negative. We think their liabilities were not the same as that of a railroad company. We think they were insurers of the goods and bound to deliver the goods."

2. That if the jury find from the evidence that at the time the loss occurred, the package had been carried by the defendant from Conneautville to Millerstown in the usual manner, and was deposited in the defendant's office, awaiting delivery to the consignee, the defendant was not liable for the loss unless its gross negligence occasioned it.

Ans. " We answer that in the negative."

In the general charge, the court, inter alia, said : " We instruct you that the express company were common carriers, and were insurers of the property. When they took the property, received it, they insured safe delivery in a reasonable time. The simple question for you is, did they deliver the goods ? If they did not, we instruct you, under the evidence, that the plaintiffs are entitled to recover the value of the goods, with interest thereon from the time the property should have been at Millerstown ; with interest from that time when it ought to have been delivered at Millerstown. If we are wrong, we can be set aright. Nothing but an unbending rule of law would compel us to charge you as we do."

Verdict for plaintiffs for $50.50. Defendant took this writ and alleged that the court erred in rejecting the above offers of evi-

dence, in the answers to the points, and the foregoing portion of the charge.

*D. C. McCoy*, for plaintiff in error.—Where goods have been carried to their place of destination, and there deposited in the carrier's warehouse to await the convenience of the consignee in taking them away, the carriers are only subject in respect to such goods to the responsibilities of warehousemen, not to that of common carriers: McCarty *v.* New York & Erie Railroad Company, 6 Casey 247; Ostrander *v.* Brown, 15 Johns. 39; Hemphill *v.* Chenil, 6 W. & S. 65; Rothchilds *v.* Michigan Central Railway Company, 69 Ill. 164.

The goods arrived on Saturday night, after business hours; the consignee was unknown, had no place of business, or known residence; it was not the usage of the business there to deliver otherwise than at the office. There could be no delivery that night, and the goods were put into the office as other goods of like character were, and on Tuesday night were burned without fault of the defendant.

It appeared on the trial by the testimony of one of the plaintiffs, who delivered the package to the defendants at Conneautville, that he took a receipt for the same; that the receipt had been given by him to one of his counsel, upon whom notice was served by the defendant to produce it, and that he failed to produce it, saying he had lost it. The receipt contained a contract which protected the defendants from loss.

*Bole & Frey*, for defendants in error.—Express companies are common carriers, and are held to personal delivery of goods intrusted to their care. In this case no personal delivery was attempted and no notice was given to the consignee of the arrival of the goods. It certainly was negligence in the company to retain the goods in their warehouse in an exposed condition for several days, and to make no attempt to deliver the goods or notify the consignee: American Union Express Company *v.* Robinson, 22 P. F. Smith 274. These companies must deliver their goods at the place of business of the consignee as early as practicable after arrival and within business hours: Marshall's American Express Company, 7 Wis. 1; Shenk *v.* Propeller Company, 10 P. F. Smith 109.

The offer of defendant was to prove the contents of the receipts used by the company at that time—not from the memory of the witness, but from a paper shown him by the defendants below on the trial, and that without any evidence or offer of evidence to show that the receipt given to plaintiffs was of the same kind, or its contents the same.

[Union Express Co. v. Ohleman.]

Mr. Justice MERCUR delivered the opinion of the court, January 5th 1880.

Express companies are common carriers, and are generally held to personal delivery either at the residence, or place of business, of the consignee. They should carry goods to their destination within a reasonable time, and deliver them as soon as practicable within business hours: Shenk v. Propeller Co., 10 P. F. Smith 109; American Union Express Co. v. Robinson, 22 Id. 274.

These goods were sent by the defendants in error from Connautville, directed to Benjamin McMahon at Millerstown. They were delivered to the express agent on Thursday in time to have reached their destination on the evening of that day if sent by direct route. It appears they were sent by a more circuitous route, which the company was then using, and they did not arrive at Millerstown until from five to six o'clock on Saturday evening. In anticipation of an earlier arrival McMahon called at the express office about two o'clock on Saturday afternoon, and inquired of the express agent if there was any package for him. The latter replied there was not.

McMahon lived about one hundred rods from the express office, and had lived at the same place for more than a year. He was well known in the town. The goods arrived at Millerstown about six o'clock on Saturday evening; but they were never delivered to McMahon nor any notice of their arrival given to him. The company retained them until Tuesday night, at which time they were destroyed by fire. Thus two entire business days intervened between the time of their arrival and the night of the fire. There is no evidence in the case tending to justify or excuse this omission of the company to either deliver the goods or give notice of their arrival. The main object of sending goods by express is to secure their early and prompt receipt. The case shows a clear disregard of duty imposed on the company.

The remaining question relates to the rejection of evidence. A receipt was given to the defendants in error when they delivered the goods to the company. No notice was proved of demand on them to produce the receipt. The remark made by the counsel of plaintiff in error was insufficient for that purpose. On the trial the plaintiff in error offered in evidence a blank receipt with proof it was the usual form of receipt used by the company before, since, and at the time, these goods were shipped. The court rejected the paper but allowed the plaintiff to show what the receipt was which the defendants took. This certainly opened wide the door to prove the contents of the receipt actually given to the defendants in error. The company did not show nor offer to show that this blank was a copy of the one given to them. The attempt was to get this paper before the jury and induce them to find it to be a copy when no witness so testified. If the witness was so doubtful

[Union Express Co. *v.* Ohleman.]

that he would not testify that in his opinion, or to the best of his belief, the paper offered was a copy of the receipt delivered, the court was clearly right in not permitting the paper to go to the jury.

Judgment affirmed.