LIVERPOOL & GREAT WESTERN STEAM Co. *v.* SUITTER and others.[1]

*(District Court, E. D. New York.* June 7, 1883.)

1. COMMON CARRIER—WAREHOUSEMAN—DELIVERY—PERISHABLE CARGO.

The steamer W. arrived at New York on Friday, December 30, 1881, having on board various consignments of fruit, which, on the following day, were discharged on a covered pier, except part of the defendant's consignment, and were all removed on that day, except the defendant's consignment. Sunday being the first of January, and Monday kept as a holiday, it remained in the custody of the steamer till Tuesday, when the fruit which had remained on the pier during Sunday and Monday was found to be injured by frost, owing to the severity of the weather, although the steamer had covered it up and protected it against frost as well as could be reasonably expected. In an action against the consignees to recover the freight on the fruit, the defendants set up by way of recoupment the damage to the fruit caused by frost. The evidence showed that on the arrival of fruit cargoes, it was usual for consignees to sell the same at auction at 12 o'clock on the day of its discharge before it was removed from the pier, and by a certain firm of auctioneers; that such a sale took place of nearly all the fruit brought by the W. on December 30th, at which all was sold except that in question: and that all that arrived by the W. was removed from the pier on that day, except the defendants' consignment, which was not removed because the defendants did not learn that their fruit was in the W. till too late to get it advertised for the sale of that day. *Held,* that the contention of the defendants that they were not bound to receive their fruit on Saturday, because the weather on that day was so cold as to render it an unsuitable day, was untenable, because other fruit was discharged and removed on that day without being injured by frost; that, even if the defendants learned of the arrival too late to put their fruit into that day's sale, still that fact did not give them the right to compel the ship-owner to retain the fruit in his custody as common carrier over the two ensuing holidays, and that the ship-owner's responsibility as common carrier terminated when the fruit was discharged, with notice to the consignee in time to remove it on that day; and that in the absence of proof showing neglect on the part of the ship-owner as warehouseman, he could not be held liable for the damage by frost.

2. SAME—USAGE.

A usage in respect to cargoes of fruit to delay the delivery until a day when the consignee should be able to have it sold on the pier, by a certain single firm of auctioneers, could not be upheld, even if shown to exist, it being unreasonable and contrary to public policy to permit the time of a vessel's discharging her cargo to depend upon the ability of a single auction house, in the accumulation of business and other engagements, to effect a sale of such cargo.

In Admiralty.

*Beebe, Wilcox & Hobbs,* for libelant.

*Charles E. Crowell,* for respondents.

BENEDICT, J. This action is brought to recover freight, amounting to $879.75, alleged to be due for the transportation, in the steam-ship Wyoming, of a shipment of oranges and lemons consigned to the defendants.

Against the demand for freight the defendants set up, by way of recoupment, damage to the fruit, caused by frost while on the pier, after it had been landed from the steamer, exceeding the freight in amount. Whether the ship-owner is liable for the damage referred to is the question to be determined.

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

The fruit was transhipped at Liverpool to the Wyoming, and transported in her to the port of New York. . The Wyoming arrived at her pier in New York on Friday evening, December 30, 1881, having on board a cargo of merchandise, including oranges and lemons consigned to various persons in New York. On Saturday morning, December 31st, at about 7 A. M., the ship commenced to discharge the fruit, which, as fast as landed, was placed upon the pier, assorted according to the marks, where it was accessible and ready for delivery to the consignees.

During that day all the fruit on board was so landed in good order, except some boxes, being part of the consignment belonging to the defendants, which were not then landed, because it was learned that the defendants would not remove their fruit from the pier on that day.

Of the fruit so landed upon the pier on Saturday all was on the same day removed from the pier, except the portion belonging to the defendants. There was plenty of time for the removal of that portion before night, but no effort was made to remove it. Sunday was the first of January. Monday was kept as a holiday. Consequently the discharging of the cargo was not resumed until Tuesday, when the remainder of the defendants' fruit was discharged, and on that day they removed all their fruit from the pier. The portion which had remained on the pier over Sunday and Monday had, however, sustained damage meanwhile by frost, which damage the defendants now rely on by way of recoupment as a defence to the ship-owner's claim for the freight.

Oranges and lemons are a perishable cargo, and it is in proof that upon the arrival of a steamer having importations of this character on board it is usual for the various consignees to sell the same at public auction on the day of its discharge from the steamer, and before it is removed from the pier. These sales are all conducted by a single firm of auctioneers, Messrs. Brown & Seccomb, at their auction house, at 12 o'clock, by which time the buyers are supposed to have had the opportunity to examine the fruit then lying on the pier at the ship's side.

In accordance with this usage, an auction sale of oranges and lemons imported by the Wyoming on the voyage in question was had on Saturday, December 30th, when all the fruit brought in the steamer was sold, except that belonging to the defendants, and some 37 boxes belonging to Phelps Bros. & Co.; and all the fruit landed from the steamer on that day, excepting that of the defendants, and including the fruit of Phelps Bros. & Co., was on the same day removed from the pier without sustaining any damage by frost.

The contention of these defendants is—*First*, that they were not bound to receive their fruit on Saturday, because the weather on that day was so cold as to render it an unsuitable day to discharge oranges and lemons. But this position is clearly untenable, for, as al-

ready stated, oranges and lemons belonging to other consignees were discharged from the steamer on the same Saturday and removed without any of it being injured by frost.

The real reason why the defendants did not accept their fruit on Saturday was, not the state of the weather, but because they did not learn that their fruit was in the Wyoming until during the forenoon of Saturday, and failed to get it advertised for the auction sale of that day.

It is next contended, in behalf of the defendants, that inasmuch as they did not learn that their fruit was in this steamer until a late hour on Saturday morning, and did not get their fruit into the auction sale of that day, they were not bound to receive it from the ship on that day.

Assuming the proof to be that the lateness of the hour on Saturday, at which the defendants learned of the arrival of their fruit in the Wyoming, rendered it impossible for them to put it into the sale of that day, still this fact did not give them the right to compel the ship-owner to retain the fruit in his custody as common carrier thereof over Sunday and Monday. The general rule is that when cargo has been landed at a suitable time, upon a suitable pier, and so placed on the pier that it can be examined by the consignee and removed from the pier, the liability of the ship-owner as common carrier in respect to such cargo terminates after the expiration of such a period of time after the goods are landed as may be reasonable to enable the consignee to examine and remove it, provided the consignee be informed of the time and place of landing. *Richardson* v. *Goddard*, 23 How. 28. This rule is applicable to cargo of the description under consideration. No reason is seen why the right of the ship-owner to terminate his liability as common carrier in respect to oranges and lemons should be affected by any necessity of the merchant to sell the fruit at auction while upon the pier. In the present instance, the fruit that was damaged on the pier was landed on Saturday, in abundant time for its removal from the pier on that day; and the consignee had actual notice of the landing in time to remove it on that day, as was done by all the other consignees whose fruit had been landed at the same time. The ship-owner's responsibility as common carrier thereof terminated on that day, therefore, and he cannot be liable for the freezing of the fruit, unless it has been shown that he neglected to take such care of the fruit left on the pier as would be required of a warehouseman in regard to fruit stored in his warehouse.

No such neglect has been proved. The pier was a covered pier, having upon it one or two stoves. As soon as knowledge came to the ship-owner that the fruit was to remain upon the pier overnight, it was covered with tarpaulins and bags, and as well protected against frost as could be reasonably expected. No precaution against frost, that was at the ship-owner's command, was neglected. The damage

which the fruit received during Sunday and Monday was owing, not to the neglect of reasonable precaution by the ship-owner, but to the severity of the weather during those days.

Thus far the case has been considered as if it were one of delivering ordinary cargo from a ship in the port of New York. But it has been sought to make the delivery of oranges and lemons an exception to the ordinary rule by testimony to the effect that in the port of New York a usage exists in respect to oranges and lemons, to delay the delivery of such fruit until a day when the consignee shall be able to procure it to be sold at auction, while on the pier, by the auctioners Brown & Seccomb, and it has been contended that no delivery of this fruit was made on Saturday, because it was not in the auction sale held on that day.

The evidence, in my opinion, fails to establish the existence of such a usage; but, if such a usage had been shown, I could not uphold it. It seems to me unreasonable, and contrary to public policy, to permit the time of discharging a ship of her cargo to depend upon the ability of a single auction house, in the accumulation of business and of other engagements, to effect a sale of such cargo for the owners thereof. Therefore I consider the fact that the defendants' fruit was not sold with the rest on Saturday, to be unimportant as affecting the liability of the ship-owner.

It results from these views that the decree must be that the libelant recover his freight, amounting to $879.75, less $38.55, for shortage, which the testimony proved, and is not disputed.