WYNANTSKILL KNITTING COMPANY, Appellant, *v.* EDWARD F. MURRAY and JOHN T. BIRGE, Respondents.

*Carriers by water — constructive delivery — duty of consignee to take goods — when the carrier becomes a warehouseman — reasonable time to remove goods is a question of law — a partial delivery excused by its acceptance.*

It is the duty of common carriers by water to convey the goods shipped to the port of destination, and there to deliver them to the consignee either actually or constructively.

There is a constructive delivery when the carrier unloads the goods at its wharf at the port of destination, notifies the consignee of the arrival of the goods, and a reasonable time for their removal by the consignee has elapsed.

It is the duty of the consignee, upon receiving such notice, to proceed at once and with diligence to remove the goods.

After the lapse of a reasonable time for the consignee to remove the goods, the liability of the carrier as such ceases, and, if he is responsible thereafter, it is as a warehouseman.

Where there is no dispute as to the facts, the question of what is a reasonable time within which the consignee should have removed the goods, after they were unloaded and he had received notice of the fact, is one of law for the court.

Upon the trial of an action brought against the defendants, as common carriers, to recover the value of seventy-one bales of cotton destroyed by fire, it appeared that a barge belonging to the defendants left the city of New York with 100 bales of cotton shipped to the plaintiff, and arrived at the port of destination on the morning of July 9, 1893, and by noon of that day seventy-one bales of the cotton had been unloaded. It further appeared that the defendants had sent a notice to the plaintiff on the eighth of July, which was received on the morning of the ninth, to the effect that the 100 bales of cotton were ready for delivery, and upon receipt of the notice the plaintiff removed some of the cotton. On the thirteenth of July a fire broke out in the cotton, and a number of bales were damaged or destroyed. Twenty-nine bales which were in the hold of the barge, surrounded by other freight, had not been unloaded at the time of the fire, and were subsequently accepted by the plaintiff, and no claim with reference to them was made in the complaint, or asserted on the trial.

*Held*, that the failure of the consignee to remove the cotton within three full days after notice of its arrival was unreasonable delay, and one which excused the carrier from any liability for the loss of the cotton;

That the liability of the carrier was not affected by the fact that twenty-nine bales of the cotton had not been unloaded at the time of the fire because it was in the hold and surrounded by other freight, which had to be first removed, it not appearing that the consignee, when it commenced to take away the seventy-one bales, made any objection to accepting the twenty-nine bales at another time.

APPEAL by the plaintiff, the Wynantskill Knitting Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Rensselaer on the 20th day of November, 1894, upon the verdict of a jury rendered after a trial at the Rensselaer Circuit, and also from an order entered in said clerk's office on the 23d day of November, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

*Olin A. Martin,* for the appellant.

*William J. Roche,* for the respondents.

PUTNAM, J.:

This is an appeal from a judgment entered in the Rensselaer county clerk's office on November 20, 1894, upon a verdict of a jury and from an order denying the plaintiff's motion for a new trial.

The following facts may be deemed established by the verdict of the jury: On Wednesday, the 6th day of July, 1892, a barge belonging to defendants left the city of New York with 100 bales of cotton owned by the plaintiff, which were shipped to it at the city of Troy. The barge arrived at Troy, reaching the dock at the foot of State street, where the defendants conduct their business, on the morning of Saturday, July ninth; the work of unloading the barge was commenced at seven o'clock, and the deckload of seventy-one bales of cotton consigned to plaintiff was unloaded before twelve o'clock of that day; on the evening of the eighth the defendants made out and deposited in a post-office box a postal card addressed to plaintiff, notifying the company that the 100 bales of cotton were ready for delivery; the plaintiff's president received this postal card on Saturday, and at once notified the teamster employed by plaintiff to go and get the cotton; defendants' witnesses say that the first was taken away on Saturday afternoon; it is not denied by plaintiff that some of the cotton was drawn away before Wednesday, the thirteenth day of July. On the afternoon of that day a fire broke out in the cotton, and thirty-six bales were damaged or destroyed. Twenty-nine bales of the cotton had been placed in the hold of the defendants' barge in New York, and other freight was placed around them, and they were not unloaded at the time the seventy-one bales were put on the wharf. When the defendants' freight, including the seventy-one bales of cotton, was removed the barge left the dock to deliver other freight, and the twenty-nine bales were taken along. It returned to defendants' dock about noon on Wednesday, the thirteenth. Before these twenty-nine bales could be unloaded the fire broke out in the cotton on the wharf. Those bales were, therefore, taken back to New York, plaintiff consenting, and subsequently taken back to Troy and accepted by plaintiff. No claim with reference to them is made in the complaint or was asserted on the trial.

The action was brought against the defendants as common car-

riers. No claim is made in the complaint or was asserted on the trial against them as warehousemen. Their duty as common carriers by water was not only to convey the cotton to the port of destination, but to deliver it there to the consignee. Such delivery could be either actual or constructive. There was a constructive delivery if the defendants unloaded the cotton at the wharf at Troy and notified plaintiff after the lapse of a reasonable time for its removal by the latter. (*Tarbell* v. *The Royal Exchange Shipping Co.*, 110 N. Y. 171.)

It was the duty of plaintiff, on receiving such notice, to at once and with diligence proceed to remove the cotton. (*Tarbell* v. *The Royal Exchange Shipping Co.*, supra; *Hedges* v. *The Hudson River R. R. Co.*, 49 N. Y. 223.)

The cotton remained at the risk of the defendants until after the lapse of a reasonable time for the consignee to remove it. After the expiration of such time the liability of the defendants as common carriers ceased, and if in any way responsible, they were only so as warehousemen. The defendants had no right to place the cotton in a warehouse for the plaintiff until the latter had a reasonable time to remove it. (*Redmond* v. *Liverpool, N. Y. & Phila. S. Co.*, 46 N. Y. 578–583.)

It has been held that what is a reasonable time in which to remove goods by the consignee after the same are unloaded at a wharf and notice given, where there is no dispute as to the facts, is ordinarily a question of law to be passed on by the court. (*Hedges* v. *The Hudson R. R. R. Co.*, supra; *Wright* v. *The Bank of the Metropolis*, 110 N. Y. 237–249; *Colt* v. *Owens et al.*, 90 id. 368.)

These authorities do not conflict with *Scheu* v. *Benedict* (116 N. Y. 510), and other cases, which hold that under certain circumstances the question of reasonable diligence in removing goods after their arrival should be submitted to the jury as a question of fact.

On the evidence in this case the jury were authorized to find that on Saturday, the ninth of July, plaintiff received the notice sent by defendants of the arrival of the cotton; it was unloaded on that day by noon and plaintiff commenced drawing it away; it was not damaged or destroyed by fire until the afternoon of the following Wednesday.

We think, under the doctrines established in the cases cited above, the court did not err in instructing the jury that if they found the cotton was delivered on the dock at Troy on the morning of Saturday, July ninth, and plaintiff received the postal card notifying it of its arrival on that day, the liability of defendants as common carriers ceased before the fire on the following Wednesday, and they were only liable thereafter, if at all, as warehousemen, and in declining to charge, as requested by plaintiff, that " the question whether this cotton was taken away by the plaintiff within a reasonable time is one, under the circumstances of this case, for the jury to pass upon."

If the plaintiff had notice of the arrival of the cotton on Saturday, the ninth, and allowed it to remain on the dock until the afternoon of the following Wednesday, it failed to act promptly and with reasonable diligence and defendants ceased to be liable as common carriers. (*Hedges* v. *The Hudson R. R. R. Co., supra; Tarbell* v. *The Royal Exchange Shipping Co., supra.*)

And it was for the court, under the circumstances, to determine the question as to the reasonable diligence of plaintiff in removing the goods. In the case of *Hedges* v. *The Hudson R. R. R. Co.* the action was brought against the defendant, as common carrier, to recover for a portion of a carload of paper destroyed by fire. The plaintiff had notice of the arrival of the paper on the morning of the twenty-fourth of May and removed one load, and the balance was burned the same night. In his opinion Judge FOLGER remarked : " We do not perceive that there is here any dispute as to the material facts. It is certain that with three or four trucks all the paper could easily have been hauled away before the close of defendant's business on the day on which one load was taken with one truck. It is certain, too, that with the one truck of their own two loads could have been received by the plaintiffs from the defendant on that day, so that it was a question of law for the court whether it was unreasonable for the plaintiffs to employ but one truck, or, if reasonable to employ but one truck, whether it was reasonable to send it but once for paper that day. The learned trial judge left the question to the jury. In this we think that he erred." In this case it is clear that the plaintiff could, with reasonable diligence, have removed the cotton during the three days that elapsed after it

received notice of its arrival, before the fire, and, under the authorities cited, the court was authorized to determine the question as to its reasonable diligence.

The trial court was not called upon to charge, as requested by plaintiff, that before the character of defendants as common carriers could change to that of warehousemen they must warehouse the freight. As we have seen, there was no claim in the complaint against defendants as warehousemen. The only question before the court was whether the defendants were liable as common carriers, and on the subject of such liability it had given the jury all the instruction necessary in a clear, full and fair charge.

The liability of defendants was not affected in any way by the fact that twenty-nine of the one hundred bales of cotton it had undertaken to transport had not been unloaded at the time of the fire. No negligence is claimed on the part of defendants in not unloading these bales at the same time they unloaded the deckload of cotton. It appears that the twenty-nine bales were in the hold of the barge surrounded by other freight and could not be unloaded until such freight was removed. Under the circumstances, we think the defendants had the right to unload the cotton in the way they did. On the unloading of the seventy-one bales plaintiff commenced taking it away, and it does not appear that it made any objection to the cotton being unloaded in two parcels, afterwards accepting the twenty-nine bales.

We think the case was fairly submitted to the jury by the learned trial judge, that no errors were committed, and that the judgment should be affirmed, with costs.

MAYHAM, P. J., concurred ; HERRICK, J., concurred in the result.

Judgment affirmed, with costs.