## AMERICAN RAILWAY EXPRESS COMPANY *v.* RHODY ET AL.

[No. 11,829. Filed April 23, 1924. Rehearing denied July 2, 1924. Transfer denied March 19, 1926.]

1. CARRIERS.—*When express company ceased to be common carrier of interstate shipment and became warehouseman is federal question.*—Since §10 of the Interstate Commerce Act, as amended June 18, 1910 (36 Stat. at L. 539) defines "carriers" as including express companies, the question as to when an express company ceased to be a common carrier of an interstate shipment and became simply a warehouseman is a federal question. p. 287.

2. CARRIERS.—*Express company's liability as common carrier and as warehouseman.*—An express company's liability as a

common carrier is that of an insurer, while its duty as a warehouseman is merely to exercise reasonable care.   p. 290.

3.   CARRIERS.—*Express company's duty generally is to deliver goods transported by it to consignee's residence or place of business, and until this duty is performed, its liability as a carrier continues.*—Generally, the duty of an express company is to deliver goods transported by it to the consignee at his residence or place of business, and until such delivery is made or waived by the consignee, or the express company is absolved from the performance of this duty by rule, usage or custom, its liability as a carrier will continue.   p. 290.

4.   CARRIERS.—*Facts held to show that meat shipped by express was to be delivered to consignee at express company's office and not at consignee's place of business.*—In an action involving the question of an express company's liability for meat stolen from its storage room after it had reached its destination, in which the express company claimed that its liability was that of a warehouseman only, the facts were *held* to show that it was not the intention of the parties that delivery was to be made at the place of business of the consignee, but at the express company's office at the railroad depot. p. 290.

5.   CARRIERS.—*Express company is liable as carrier for loss of goods after reaching their destination and before attempted delivery; but after unsuccessful good-faith effort to make delivery, it is liable only as warehouseman.*—Where goods shipped by express are stolen, lost or destroyed after reaching their destination but before any attempt to deliver has been made, the express company is liable as a carrier; but where a good-faith effort to deliver has been made, and delivery is not possible, its duty as a carrier is ended, and for any loss of goods thereafter, it is liable only as a warehouseman. p. 292.

6.   CARRIERS.—*Express company's liability as carrier after arrival of goods at destination.*—An express company which has transported goods to their destination, to be delivered to the consignee at express company's office at railroad depot, continues liable as a carrier for a reasonable time for their removal after notice of the arrival of the goods.   p, 297.

7.   CARRIERS.—*Reasonableness of time for removal of goods by consignee after arrival at destination is for the court if facts are undisputed, otherwise for the jury.*—When the facts are certain and undisputed and subject to but one inference, the court, and not the jury, should determine what is a reasonable time for the consignee to remove the goods after their arrival

at their destination; but if there is a conflict of evidence as to the material facts, or if the facts are doubtful, or if reasonable men might draw different inferences, it is a question for the jury. p. 302.

8. CARRIERS.—*Express company held to be liable as warehouseman only after timely notice of shipment and goods were stolen in nighttime.*—Where the consignee of a shipment of meat by express had been notified of its arrival at the usual place of delivery and reached there in time to have removed it from the express company's storage room during the day, but postponed removal until the following day, the express company's liability for loss of the meat in the nighttime was that of a warehouseman and not of a carrier, as the consignee had a reasonable time for removal before night. p. 302.

From Cass Circuit Court; *Paul M. Souder,* Judge.

Action by Harrison Rhody and others against the American Railway Express Company. From a judgment for plaintiffs, the defendant appeals. *Reversed.* By the second division.

*Rabb, Mahoney & Fansler,* for appellant.
*Long & Yarlott,* for appellees.

McMAHAN, J.—Appellees recovered a judgment against appellant for the value of certain meat, which appellees had shipped from Royal Center, Indiana, and consigned to Fred Pegel, Jr., at Lansing, Illinois.

The facts were found specially and are, in substance, as follows: On March 24, 1920, appellees were partners doing business at Royal Center, Indiana. Appellees on said day delivered to appellant, a common carrier for hire, a number of carcasses of veal to be shipped to Fred Pegel, Jr., at Lansing, Illinois. There was a shipping bill or bills of lading signed by both parties giving the name and address of the consignee and stating that the meat was to be transported to Lansing. This shipment reached Lansing 9:50 a. m. of said day, was unloaded by appellant and placed in the storage room at the railroad depot at Lansing which was used

by appellant for storage purposes. Pegel lived and had his place of business in Chicago at a point about thirty miles from Lansing, which is a town of about 1,800 inhabitants, about ten miles south from the southern limits of Chicago, and about four miles west of Hammond, Indiana. There was at that time a concrete pavement from Lansing to the business district of Chicago.

Said meat was shipped to Pegel on consignment and was at all times the property of appellees, who had made at least two other shipments in March, 1920, to Pegel at Lansing. Appellant knew the consignee would receive this shipment of veal at Lansing and take it to Chicago by truck. About noon of said day, appellant's agent at Lansing mailed a postal card to Pegel notifying him of the receipt of the veal. About the time this postal card was mailed and before it was received by Pegel, he called appellant's agent at Lansing by telephone and was informed of the arrival of the shipment, at which time he told appellant's agent he would call for it sometime during that day. Appellant's office and storage room at Lansing remained open in charge of an agent until after 7:25 p. m. of said day.

A truck driver and agent of Pegel took a truck load of some character from Chicago to Hammond that afternoon and, after unloading at Hammond, went to Lansing for the purpose of receiving said meat. This truck driver with his truck arrived at Lansing for the purpose of receiving this meat, and could have received it that day but did not ask for it or receive it that day, but left for Chicago, at 7:25 p. m.

Part of this meat was stolen from appellant's storeroom that night without any fault of appellant. The next day said truck driver "returned by rail" and with his truck called for and received from appellant all of said meat, except that which had been stolen. The value of the part stolen was $107.46. On each of the

prior shipments from appellees to Pegel, at Lansing, the latter or his men appeared at appellant's office and received such shipments on their arrival or soon thereafter without any notice from appellant.

It was also found that Pegel did not have a reasonable time after he received notice of the arrival of the meat at Lansing within which to receive and remove it before the night of March 24.

Upon these facts, the court concluded as a matter of law that appellees were entitled to recover the value of the meat with interest, and judgment was rendered accordingly.

Appellant contends that having safely transported the meat to its destination and having placed it in a place of reasonable safety for delivery to the consignee, its duty as a carrier terminated and that thereafter it was liable only as a warehouseman. Appellees contend that appellant's obligation as a common carrier had not ceased for the reason that the consignee did not have a reasonable time in which to remove the meat before it was stolen. The question for our determination is whether under the facts found appellant had fully discharged its duty as a carrier and was simply acting as warehouseman when the meat was stolen.

Under the interstate commerce act of February 4, 1887, (24 Stat. at L. 379, ch. 104, U. S. Comp. Stat. 1911, p. 1284) §10, as amended by the act of June 18, 1910, (36 Stat. at L. 539, ch. 309) the term "carrier" is defined as including express companies. *United States* v. *Adams Express Co.* (1913), 229 U. S. 381, 33 Sup. Ct. 878, 57 L. Ed. 1237; *American Express Co.* v. *United States* (1908), 212 U. S. 522, 29 Sup. Ct. 315, 53 L. Ed. 635; *State, ex rel.,* v. *Adams Express Co.* (1908), 171 Ind. 138, 19 L. R. A. (N. S.) 93; *Adams Express Co.* v. *Cook* (1915), 162 Ky. 592, 172 S. W. 1096. The shipment in question being

an interstate shipment, the question as to when, if at all, appellant ceased to be a common carrier is a federal question. *Adams Express Co.* v. *New York* (1913), 232 U. S. 14, 34 Sup. Ct. 203, 58 L. Ed. 483; *Southern R. Co.* v. *Prescott* (1916), 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 632; *Adams Express Co.* v. *Croninger* (1912), 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257; Roberts, Federal Liability of Carriers §§109, 311.

In *Bank of Kentucky* v. *Adams Exp. Co.* (1876), 93 U. S. 174, 23 L. Ed. 872, it is said: "The duty of a common carrier is to transport and deliver safely. He is made, by law, an insurer against all failure to perform this duty, except such failure as may be caused by the public enemy, or what is denominated the act of God."

The nature of a common carrier's liability when it has transported property and deposited it in a warehouse to await delivery to the consignee is a question on which three distinct views have been taken by the courts of this country: First. When the transit is ended and the carrier has placed the goods in its warehouse to await delivery to the consignee, its liability as carrier is ended though no notice is given to the consignee, and the carrier is thereafter liable as warehouseman only. This doctrine is what is known as "the Massachusetts rule." Second. Merely placing the goods in the warehouse does not discharge the carrier, but it remains liable as a carrier until the consignee has had reasonable time to take them away in the ordinary course of business. This rule is known as "the New Hampshire rule." Third. The liability of a carrier as such continues after the consignee has been notified of the receipt of the goods and has had a reasonable time in the common course of business to take them away after receiving notice. This rule differs from the second in

that notice to the consignee is required and is known
as "the New York rule."

The Massachusetts rule has been adopted and followed
in Indiana and applied to carriers by railroads. *Chi-*
*cago, etc., R. Co.* v. *Reyman* (1906), 166 Ind. 278; *Mer-*
*chants Dispatch, etc., Co.* v. *Merriam* (1887), 111 Ind.
5; *Pittsburgh, etc., R. Co.* v. *Nash* (1873), 43 Ind. 423;
*Cincinnati, etc., R. Co.* v. *McCool* (1866), 26 Ind. 140;
*Bansemer* v. *Toledo, etc., R. Co.* (1865), 25 Ind. 434, 87
Am. Dec. 367. Some of these cases involved interstate
shipments, while others relate to intrastate shipments.
They were all decided before Congress assumed control
over interstate commerce and therefore are not ruling
precedents which we are required to follow in a case
involving interstate commerce. If we were dealing
with an intrastate shipment made by a railroad, the de-
cisions of the Supreme Court of this state heretofore
cited would be binding on this court. This court, how-
ever, refused to apply the Massachusetts rule in an
action by a passenger for the loss of his baggage, and
held that the railroad was not relieved from its liabil-
ity as to a passenger's baggage until after the expira-
tion of a reasonable time after reaching its destination.
*Toledo, etc., R. Co.* v. *Tapp* (1893), 6 Ind. App. 304;
*Pennsylvania Co.* v. *Liveright* (1895), 14 Ind. App. 518.

The exemption of carriers by water and carriers by
railroads from making personal delivery to the con-
signee does not ordinarily extend to express companies.
With the introduction of railroads, express companies
were established for the purpose of extending to the
public the advantages of personal delivery the same as
had theretofore been performed by carriers by land.
*Witbeck* v. *Holland* (1871), 45 N. Y. 13, 6 Am. Rep. 23.
The rule requiring personal delivery became the rule as
to express companies. Such carriers however may be

relieved from making personal delivery, by agreement of the parties or by proof of a usage so established and well known as to be the equivalent of an agreement. *American Express Co.* v. *Hockett* (1868), 30 Ind. 250, 95 Am. Dec. 691.

The duty of an express company with respect to property which has reached its destination and is awaiting delivery is that of either a common carrier or a warehouseman. As its liability as a common carrier is that of an insurer, while as a warehouseman it has to exercise only reasonable care, it is a matter of importance to determine whether appellant's liability for the loss of the meat shall be tested by its duty as carrier or warehouseman. The determination of this question depends upon ascertaining the time when its duty as a carrier ceased, if at all, and that of a warehouseman began. It is clear that until it performed all its duties as a carrier, it remained liable as an insurer. Generally, the duty of an express company is to deliver goods transported by it to the consignee at his residence or place of business, and until such delivery is made or waived by the consignee, or the express company is absolved from the performance of this duty by rule, usage, or custom, its liability as a carrier will continue.

2, 3.

While the special finding discloses there was a written bill of lading, none of its provisions is set out, nor is there any finding that there were or were not any regulations promulgated or approved by the Interstate Commerce Commission. From the facts, we think it is clear that it was not the intention of the parties that appellant should deliver the meat in question to the consignee either at his residence or at his place of business. The delivery was to be made at the railroad depot at Lansing.

4.

In *Hutchinson* v. *United States Express Co.* (1907),

63 W. Va. 128, 59 S. E. 949, 14 L. R. A. (N. S.) 393, the goods, as in the instant case, were to be transported to the point of destination, with the understanding that the consignee would call for them. The court, in discussing the duties of express companies generally, said: "By the general rule of law, express companies are required to deliver the goods to the consignee in person, or his authorized agent, at his residence or place of business. The duty of carriage is not terminated on their arrival at the point of destination, that is, at the station or agency to which they are directed. The duty of carriage and the liability as carrier continue beyond this point to the residence or place of business of the consignee. * * * In this respect, express companies differ from other public carriers. But this rule is subject to some qualifications. If a diligent and honest effort to find the consignee or any person authorized to receive the goods has proved unavailing, failure to make actual delivery is excused, and the company may then deposit the goods in a reasonably safe warehouse. From time of such deposit, its liability as carrier ceases, and it holds the property in the capacity of warehouseman. * * * Of course the commencement and termination of liability as carrier may be limited and controlled to some extent by special contract. How far this may be done, it is unnecessary here to inquire. The general rule of law is also relaxed, varied or set aside by usage or custom established by the company and recognized and acquiesced in by the public. The maintenance of delivery messengers and vehicles involves an expense wholly out of proportion to the business transacted at small way stations, and, at such places, a custom or usage generally obtains under which deliveries are not made elsewhere than at the express company office. The consignee is expected to call at the office for his package after having been notified of its arrival.

Even in cities, delivery districts are sometimes established, beyond the limits of which deliveries are not made. * * * The duty to give notice, usually by mail, is founded upon the usage or custom, dispensing with the general rule requiring delivery at the place of business of the consignee. Bearing this in mind, the conclusion that the express company is bound to give notice of the arrival of the goods, is not inconsistent with the holding in *Berry* v. *West Virginia, etc., R. Co.,* 44 W. Va. 538, declaring that a railroad company is not required to give notice to the consignee of such arrival. The rules of law prescribing the duties of railroad companies and express companies differ in this respect and the difference is founded upon the additional burden placed by the law upon express companies to carry the goods from the office to which they are consigned to the residence or place of business of the consignee. But for the usage to the contrary, the liability as carrier would not end until after such delivery or an unsuccessful effort to effect it. The general rule is only partially set aside by usage. Instead of making such actual delivery, the company gives a notice of the arrival and so substitutes for actual delivery a sort of constructive delivery. It necessarily follows that a reasonable time must be allowed for removal of the goods after notice has been given."

The rule holding such companies as insurers where goods were stolen, lost or destroyed before attempt made to deliver has been enforced so universally as not 5. to call for the citation of many authorities. But, see *American Express Co.* v. *Baldwin* (1861), 26 Ill. 504, 79 Am. Dec. 389; *American, etc., Express Co.* v. *Schier* (1870), 55 Ill. 140; *Southern Express Co.* v. *Armstead* (1873), 50 Ala. 350; *Union Exp. Co.* v. *Ohleman* (1879), 92 Pa. 323; *Bennett* v. *Northern Pac. Exp.* (1885), 12 Ore. 49, 6 Pac. 160. But where the express

company has made a good faith effort to deliver, and through no fault of itself delivery is not possible, its duty as a carrier is thereby ended, and for any loss to the goods thereafter, it is liable only as a warehouseman. *Howard Express Co.* v. *Wile* (1870), 64 Pa. 201; *Adams Express Co.* v. *Darnell* (1869), 31 Ind. 20, 99 Am. Dec. 582; *American Exp. Co.* v. *Hockett, supra;* *Hutchinson* v. *United States Express Co., supra; Hasse* v. *American Express Co.* (1892), 94 Mich. 133, 53 N. W. 918, 34 Am. St. 328. The last case cited related to a C. O. D. shipment, where the court said: "The defendant's contract as common carrier was to safely carry the goods to their destination, to notify the consignee of their arrival, and to offer delivery upon payment of the amounts."

The United States Commerce Court in *Atchinson, etc., R. Co.* v. *Interstate Commerce Comm.* (1911), 188 Fed. 229, in speaking of the common-law duties of carriers by land and railroads, said: "In the absence of special contract or usage to the contrary, under the common law carriers by land are bound to deliver or tender goods to the consignee at his residence or place of business, and until this is done they are not relieved from responsibility as carriers. This rule, however, never was applied to railroads. They are exempt from the duty of personal delivery, and bound only to carry the goods to the depot or station to which they are destined and there hold or place them in a warehouse ready for delivery whenever the consignee or owner calls for them, after notifying the consignee or owner of their readiness to deliver." Citing *Fenner* v. *Buffalo, etc., R. Co.* (1871), 44 N. Y. 505, 4 Am. Rep. 709; *Witbeck* v. *Holland, supra; Chalk* v. *Charlotte, etc., R. Co.* (1881), 85 N. C. 423; *South, etc., R. Co.* v. *Wood* (1880), 66 Ala. 167, 41 Am. Rep. 749; *New Orleans, etc., R. Co.* v. *Tyson* (1872), 46 Miss. 729; *State, ex rel.,* v. *Republican*

*Valley R. Co.* (1885), 17 Nebr. 647, 24 N. W. 329, 52 Am. Rep. 424; *Francis* v. *Dubuque, etc., R. Co.* (1868), 25 Iowa 60, 95 Am. Dec. 769; *Evershed* v. *London, etc., R. Co.* (1877), 2 Q. B. Div. (Eng.) 254.

In *Norton* v. *The Richard Winslow* (1895), 67 Fed. 259, the court said: "It is the general rule of law respecting carriers of goods that their liability as carriers terminates with the service of transportation, after a reasonable time and opportunity for the consignee to accept and remove them."

In *The Titania* (1903), 124 Fed. 975, it is said: "The carrier thereupon became an absolute insurer for their safe carriage and delivery... The claimant claims that they were delivered on the wharf, and that their loss was due to the delay of the libelants in taking them away. It is true that a carrier does not remain under the very strict liability of a carrier after a delivery on the wharf, notice to the consignees, and a reasonable time for the consignees to take the goods away." On appeal, this case was affirmed (131 Fed. 229) where the court after quoting from *The Eddy* (1866), 5 Wall. 481, 495, 18 L. Ed. 486, said: "In order to make a valid delivery, which relieves the carrier from liability, it is necessary to show that the goods in question were landed on the wharf, segregated from the general cargo so as to be conveniently accessible to the consignee, that notice was given of their arrival and location and a reasonable time allowed for their removal."

In *Richardson* v. *Goddard* (1859), 23 How. 28, 16 L. Ed. 412, the court said: "The policy of the law holds the carrier to a rigorous liability; and in the discharge of it, he is not bound to await the convenience or accommodate himself to the caprice or conscientious scruples of the consignee. * * * The consignee may think it proper to keep Saturday as his Sabbath, and to observe Friday as a fast day, or other * * *

festivals, or he may postpone the removal of the goods because his warehouse is not in order to receive them; but he cannot exercise his right at the expense of others, and compel the carrier to stand as insurer of his property, to suit his convenience or his conscience." To the same effect see *Marshall* v. *American Express Co.* (1858), 7 Wis. 1, 73 Am. Dec. 381; and *Roth* v. *Buffalo, etc., R. Co.* (1866), 34 N. Y. 548, 90 Am. Dec. 736, where it is held that it is not within the power of a consignee to prolong the extraordinary liability of a carrier. The case last cited also held that whether the consignee had a reasonable time to remove the property was a question of law.

In *Hutchinson* v. *United States Express Co., supra,* after calling attention to the strict liability of express companies as insurer of the safe carriage of goods, the court called attention to the duties of the consignee, saying: "While in transit, property is wholly in the hands of the carrier and beyond the personal control of the owner, who can neither know to what perils the carrier subjects it, nor take any measures for its safety, and the opportunities of the carriage contract for imposition by fraud and collusion are very great. These and other considerations form the basis of the insurance feature of the contract, and when these reasons for its continuation have ceased, by the completion of the contract of carriage, the liability as insurer terminates. From its exceptional and arbitrary character, it necessarily follows that the party in whose favor it is imposed, must be diligent in the performance of every * * * special contract. The insurance is not primary or special in character, but merely incidental to the main duty of carriage. It begins and ends with the duty of carriage, and the incidental time necessary to receiving the goods for shipment and delivering them after shipment. It has no independent life or being. The owner of the

goods cannot consult his mere convenience in respect to the time of removal after notice. He must remove promptly, though the weather be inclement and the roads difficult for travel. 'A consignee must promptly and diligently remove goods in a reasonable time after arrival, without regard to distance from depot, or the means of removal or convenience of the consignee, else the carrier will cease to be further liable as carrier.' "

If this meat had been shipped as freight by the railroad under the uniform bill of lading used for that purpose, the carrier would have been required to have given the consignee notice of its arrival and the latter would have had forty-eight hours within which to have removed it, and if, within that time, it had been stolen from the warehouse, the railroad company would have been liable as a carrier and not as a warehouseman. *Michigan, etc., R. Co.* v. *Mark Owen & Co.* (1921), 256 U. S. 427, 41 Sup. Ct. 554, 65 L. Ed. 1032.

The purpose of Congress in the enactment of the Interstate Commerce Act was to bring about a uniformity of rates and to prevent discrimination in interstate commerce. The provision in the uniform bill of lading in use by the railroads, giving the consignee forty-eight hours after notice to remove the goods, being approved by the Interstate Commerce Commission, had the effect of requiring all railroad carriers of interstate shipments to give the consignee notice and a reasonable time within which to remove the goods before the liability of such carrier would be reduced to that of a warehouseman. Thus, the New York rule requiring notice of the arrival of the goods and giving a reasonable time within which to remove, has, through the Interstate Commerce Commission, been made to apply to interstate shipment by railroads.

The action of the court in the case last cited in holding that during the forty-eight-hour period after no-

tice, the carrier not only held the goods as a carrier but that, during that time, no charge could be made for storage, is quite indicative of the tendency of that court to follow the New York rule.

And in *Warner* v. *The Illinois* (1884), 29 Fed. Cas. 258, the court quotes with approval from *Redmond* v. *Liverpool, etc., Steamboat Co.* (1871), 46 N. Y. 578, 7 Am. Rep. 390, as follows: "A mere deposit of the goods by the respondents on their own wharf, without acceptance by the consignee, not separated and set apart from the residue of the cargo, and without a reasonable opportunity and time for the removal, does not discharge the respondents, and they remain at the risk of the carriers."

In *The Eddy, supra,* the court in speaking of the duty of a carrier by water said: "Where the contract is to carry by water from port to port an actual delivery of the goods into the possession of the owner or consignee, or at his warehouse, is not required in order to discharge the carrier from his liability. He may deliver them on the wharf; but to constitute a valid delivery there, the master should give due and reasonable notice to the consignee, so as to afford him a fair opportunity to remove the goods, or put them under proper care and custody." See *Ex parte Easton* (1877), 95 U. S. 68, 75, 24 L. Ed. 373; *Faulkner* v. *Hart* (1880), 82 N. Y. 413, 37 Am. Rep. 574; see, also, *Burr* v. *Adams Express Co.* (1903), 71 N. J. Law 263, 58 Atl. 609, where the court in an opinion by Mr. Justice Pitney, then judge of the New Jersey Supreme Court, held the consignee entitled to notice and reasonable time to remove.

Many other federal cases to the same effect might be cited, but we deem the cases heretofore cited sufficient to warrant us in holding that the consignee in the instant case was entitled to a reasonable

time after notice of the arrival of the meat within which to remove it, and that, until the expiration of such time, appellant continued liable as a carrier.

This leaves for our determination the question as to whether the consignee had a reasonable time within which to remove the meat before it was stolen. The facts as found by the court fail to disclose whether appellant, in the ordinary and general course of its business, made delivery of shipments to Lansing at the residences or places of business of the consignees. We know that appellant had an office and agent at Lansing, and it being the duty of an express company to make personal delivery of goods entrusted to its care, we must, in the absence of a contrary finding, presume, that appellant generally delivered goods at the residence or place of business of a consignee who lived or had his place of business at Lansing or within the limits of the established free delivery district. This was a duty the law exacted, and if the consignee in the instant case had resided or had had his place of business at Lansing, appellant could not have changed its character from a carrier to a warehouseman by giving notice and placing the meat in question in its warehouse, and thus reduced its liability to that of a warehouseman. The meat would have remained in its possession as a carrier until it had either made a personal delivery, or having made a good faith effort to make such a delivery, and, having failed in such effort, had thereafter placed the meat in its warehouse.

The Supreme Court of this state, in speaking of the duty of an express company to deliver, said: "The doctrine that the carrier's duty to deliver and the consignee's duty to receive are reciprocal, and that each must be maintained, is approved by the plainest considerations of justice, and is necessary to prevent wrong and imposition. We are not aware that it has ever

been questioned. It has, on the contrary, been recognized by many decisions, but in none that we are advised of has it been so plainly declared as in *Roth* v. *Buffalo, etc., R. Co.,* 34 N. Y. 548. See, also, *Marshall* v. *American Express Co.,* 7 Wis. 1; *Richardson* v. *Goddard,* 23 How. (U. S.) 28. It may not be possible always to fix the exact time when the carrier's responsibility as insurer ceases, and when he becomes a mere bailee in deposit or otherwise. But where, as is alleged here, the consignee has notice of the arrival, and the carrier is ready to deliver, it seems to accord with reason as well as authority that then the liability as carrier ends." *Adams Express Co.* v. *Darnell, supra.*

If, in the instant case, the consignee's place of business had been at Lansing and appellant had maintained a delivery service at that place, there is no room for doubting that, in the ordinary course of business, it would have delivered the meat in question that day and released itself from all liability. Nor is there any room to doubt but that the consignee, if he had resided and had a place of business at Lansing, would, in the ordinary course of business, have removed the meat that afternoon if appellant did not make deliveries at that place.

The fact that the consignee's residence and place of business chanced to be thirty miles from Lansing gave him no greater rights than he would have had if they had been at Lansing. This being true, the fact that his place of business and residence were in Chicago did not increase the responsibilities of appellant. It owed him no duty other than it owed those living at Lansing. The consignee learned that the meat was at the depot at noon. In the ordinary course of business, he could have gone to Lansing that afternoon and got the meat. He informed appellant's agent he would do so, but instead of so doing, he, for his own convenience, preferred

to attend to other business and postpone removal of the meat, and thus unnecessarily extend appellant's liability as a carrier for his benefit.    After informing appellant's agent at Lansing that he would call for the meat that afternoon, he sent his employee with a truck load of goods to Hammond.    We are not advised as to the time this man reached Lansing, or how long he was delayed on account of being first required to go to Hammond.    All we know is that he reached Lansing, as the court finds, "some time in the afternoon or evening," for the purpose of getting the meat; that he arrived there in time to have gotten it, but, to suit his caprice or convenience, he neither called for it nor received it. He left his truck at Lansing and returned by rail the next morning after part of the veal had been stolen. The fact that this man had ample time to take a load of goods to Hammond, and, after unloading his goods at Hammond, reached Lansing in time to have called for and received the meat in question, conclusively shows that if he had gone directly from the consignee's place of business to Lansing instead of going to Hammond, he would have had time to have gotten the meat that afternoon.    This fact renders nugatory that part of the finding where it is found that the consignee did not have a reasonable time within which to remove the meat.

In *Gulf, etc., R. Co.* v. *Ferguson-McKinney Dry Goods Co.* (1910), 97 Miss. 266, 62 So. 797, the court said: "The liability of a railroad company as common carrier is widely different from its liability as a warehouseman after the goods have reached their destination. The liability in each case is the same as to all persons, no matter how near or remote the consignee may be to the place of delivery.    If a party has his place of business distant from the depot of the railroad, he cannot, by reason of this fact, force upon the railroad a greater

liability in the handling of his goods than would be incurred by the railroad in handling goods for one in close proximity. The liability of the carrier as insurer of the goods continues after arrival of the goods at their destination until notice to the consignee and until the consignee has had a reasonable time in which to remove his goods. All these things may reasonably be said to be within the terms of the contract of carriage. But the rule is not varied in any way by any question as to how far, or how near, the consignee may reside from the place to which he had his goods consigned. What is a reasonable time for the consignee to remove the goods is necessarily of fact, and must be largely left to the jury; but it is to be determined with reference to what would be a reasonable time as applied to one residing in the vicinity of the place of delivery."

Distance of consignee from the depot or means of removal is not to be considered in determining what is a reasonable time. Michie, Law of Carriers §1096; *Berry* v. *West Virginia, etc., R. Co.* (1898), 44 W. Va. 538, 30 S. E. 143, 67 Am. St. 781; *Gulf, etc., R. Co.* v. *Ferguson-McKinney Dry Goods Co., supra; Columbus, etc., R. Co.* v. *Ludden* (1889), 89 Ala. 612, 7 So. 471.

The following cases hold the time indicated more than a reasonable time. From morning to close of business on that day, *Liverpool, etc., Co.* v. *Suitter* (1883), 17 Fed. 695, affirmed in 22 Fed 560; one full day and part of another, where consignee was absent, and had no agent to whom delivery could be made, *Northrop* v. *Syracuse, etc., R. Co.* (1867), 3 Abb. App. Dec. (N. Y.) 386, 5 Abb. Pr. (N. S.) 425; one day, *Brand* v. *New Jersey, etc., Co.* (1894), 30 N. Y. Supp. 903.

In *Southern Express Co.* v. *Holland* (1895), 109 Ala. 362, 19 So. 66, Holland was expecting a package by express at a small way station where he knew it was the custom for consignees to call for express packages

upon their arrival. The package arrived at 4:20 p. m. The express company's office remained open until 7:30 p. m. Within ten minutes after the package arrived, the express company's agent started to the consignee's office, which was not more than forty yards distance, to give him notice of its arrival and found the office closed. About dusk of the same evening, the agent saw Holland and told him he had an express package for him, when Holland said: "All right, I'll get it in the morning." The package contained $183 in money, and, without any fault of the express company, was stolen the following night. It was held that the consignee having failed to avail himself of the opportunity to receive the package, the liability of the express company as a carrier ceased and that it was not liable for the loss.

When the facts are certain, undisputed, and subject to but one inference, the court, and not the jury, should determine what is a reasonable time for the consignee to remove the goods after their arrival. *Tallassee Falls Mfg. Co.* v. *Western R. Co.* (1900), 128 Ala. 167, 29 So. 203; *Columbus, etc., R. Co.* v. *Ludden, supra; Railway Co.* v. *Nevill* (1895), 60 Ark. 375, 30 S. W. 425, 28 L. R. A. 80, 46 Am. St. 208; *Chicago, etc., R. Co.* v. *Boyce* (1874), 73 Ill. 510, 24 Am. Rep. 268; *Adams Express Co.* v. *Tingle* (1885), 7 Ky. Law Rep. 441; *Derosia* v. *Winona, etc., R. Co.* (1872), 18 Minn. (Gil. 119) 133; *Pinney* v. *First Div. St. Paul, etc., R. Co.* (1872), 19 Minn. (Gil. 211) 251; *Roth* v. *Buffalo, etc., R. Co., supra; Hedges* v. *Hudson River R. Co.* (1872), 49 N. Y. 223; *Wynantskill Knitting Co.* v. *Murray* (1895), 90 Hun 554, 36 N. Y. Supp. 26; *Laporte* v. *Wells Fargo & Co.'s Express* (1897), 23 App. Div. (N. Y.) 267, 48 N. Y. Supp. 292; *Normile* v. *Northern Pac. R. Co.* (1904), 36 Wash. 21, 77 Pac. 1087, 67 L. R. A. 271; *Lemke* v. *Chicago, etc., R. Co.* (1876), 39 Wis. 449; *Denver, etc., R. Co.* v. *Peterson* (1902), 30

Colo. 77, 69 Pac. 578, 97 Am. St. 76; *Frank* v. *Grand Tower, etc., R. Co.* (1894), 57 Mo. App. 181; *Poythress* v. *Durham, etc., R. Co.* (1908), 148 N. C. 391, 62 S. E. 515, 18 L. R. A. (N. S.) 427; *Knight* v. *Southern Railway* (1909), 85 S. C. 78, 67 S. E. 16; *Berry* v. *West Virginia, etc., R. Co.* (1898), 44 W. Va. 538, 30 S. E. 143, 67 Am. St. 781. On the other hand if there be a conflict of evidence as to material facts, or if the facts are doubtful or if reasonable men may draw different inferences, it is a question for the jury. We hold, under the facts in this case, that the consignee had a reasonable time within which, he, in the common course of business, could have removed the meat before it was stolen, and that the court erred in its conclusion of law.

Reversed, with directions to the court to restate its conclusion of law and to render judgment accordingly.